1    DAVID J. WEILAND #160447
     Email: dweiland@ch-law.com
2    STEVEN C. CLARK #181050
     Email: sclark@ch-law.com
3    COLEMAN & HOROWITT, LLP
     499 W. Shaw Avenue, Suite 116
4    Fresno, California 93704
     Telephone: (559) 248-4820
5    Facsimile: (559) 248-4830

6    Attorneys for Defendant NEIL JONES FOOD COMPANY, dba SAN BENITO FOODS

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10   JOSEPH VALLEJO, VICTOR ESPERICUETA        Case No.: 5-24-cv-06835-NW
     and CHRISTOPHER JONES on behalf of
11   themselves and all others similarly situated

12                    Plaintiffs,              **DEFENDANT/CROSS-
                                               COMPLAINANT'S REPLY TO
13           vs.                               PLAINTIFF'S OPPOSITION TO
                                               MOTION TO DISMISS & MOTION TO
14   THE NEIL JONES FOOD COMPANY, dba          STRIKE CLASS ALLEGATIONS**
     SAN BENITO FOODS
15                                             **Date: June 18, 2025**
                                               **Time: 9:00 a.m.**
16                    Defendant.               **Courtroom: 3**

17

18

19   THE NEIL JONES FOOD COMPANY, dba
     SAN BENITO FOODS
20
                      Cross-Complainant,
21
             v.
22
     SUNNYSLOPE COUNTY WATER
23   DISTRICT, a proprietary entity; ROES 1 – 10,
     inclusive,
24                    Cross-Defendants.

25           Defendant/Cross-Complainant NEIL JONES FOOD COMPANY, dba SAN BENITO

26   FOODS("NJFC") submits the following Memorandum of Points and Authorities in support of

27   its Reply to the Opposition of Plaintiff's ("VALLEJO") Motion to Dismiss and Motion to Strike

28   Allegations.

**INTRODUCTION**

Plaintiffs' Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint and Motion to Strike Class Allegations (the "Opposition") fails to convincingly articulate why this motion should not be granted.  Plaintiffs have failed to show that they have properly alleged facts demonstrating a substantial or unreasonable interference with their use or enjoyment of property as required for a viable nuisance claim.  The Complaint lacks facts which would show anything close to substantial or unreasonable interference. Rather, it provides vague allegations of odors and does not attempt to state when or where these alleged odors began but does allege that they "continue," even though the allegations all focus on a few instances when alleged Notices of Violation ("NOVs") were issued by the Monterey Bay Air Resources District ("MBARD"). (Complaint ¶ 30.)   Seeking to leverage these alleged NOVs, Plaintiffs assert causes of action for private nuisance, public nuisance, and negligence.  However, three instances over three years does not constitute substantial interference.

Plaintiffs have also failed to show how they have plead actual physical harm to themselves or their property to overcome the economic loss rule.  Further, their arguments suggesting that their claims fit into an exception to the doctrine are non-persuasive.  Lastly, Plaintiffs have not established that this matter is appropriate to be brought as a class action lawsuit as any alleged nuisance would affect each property owner or occupant differently.

Again, the parties should not have to bear the great expense of litigating this case through a class certification motion that will undoubtedly fail, and on theories of recovery that California simply does not allow.  As such, the motion should be granted in its entirety.

**DISCUSSION**

**A. Plaintiffs' Have Not Alleged Sufficient Facts to Maintain Their Nuisance Claims.**

Plaintiffs have alleged that the noxious odors caused interference with their use and enjoyment of their properties.  However, to survive a Rule 12(b)(6) motion to dismiss, the alleged interference must amount to a "substantial interference" and Plaintiffs must allege facts demonstrating that the interference was "unreasonable," meaning that it was "of such a nature,

duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." *Helix Land Co. v. City of San Diego* (1978) 82 Cal. App. 3d 932, 950; *San Diego Gas & Elec. Co. v. Super Ct.*, 13 Cal. 4th 893, 938 (1996).

Plaintiffs' claim that odors prevented them from opening windows or having barbeques do not meet this as a matter of Rule 8 pleading requirements under *Twombly/Iqbal. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). The California Supreme Court has noted that "each individual in a community must put up with a certain amount of annoyance, inconvenience and interference and must take a certain amount of risk in order that all may get on together.  The very existence of organized society depends upon the principle of 'give and take, live and let live,' and therefore the law of torts does not attempt to impose liability or shift the loss in every case in which one person's conduct has some detrimental effect on another." *San Diego Gas & Elec.,* 13 Cal. 4th at 937–38.  Plaintiffs have clearly not stated viable claims for nuisance.

**B.  The Economic Loss Doctrine Clearly Bars Plaintiffs' Negligence Claims.**

It is well-established that California law precludes negligence claims premised on purely economic loss: "liability in negligence for purely economic losses . . . is 'the exception, not the rule' under our precedents." *S. California Gas Leak Cases* (2019) 7 Cal. 5th 391, 400 (citation omitted); see also Restatement (Third) of Torts: Liab. for Econ. Harm § 1 (2020) ("An actor has no general duty to avoid the unintentional infliction of economic loss on another.").

Again, Plaintiffs have not alleged any physical property damage or personal injuries. Rather, they seek recovery for only economic losses – "interference with the use and enjoyment of private property, loss of property values, and adverse impacts on property values." (Complaint ¶ 61.)  Rather, Plaintiffs are incorrectly contending that the economic loss doctrine does not apply because Plaintiffs claim that interference with the use and enjoyment of property is never purely economic loss. (See Opposition at page 15, lines 9-10.)

However, California law is clear: The term "economic loss" is used as a "shorthand for 'pecuniary or commercial loss that does not arise from actionable physical, emotional or reputational injury to persons or physical injury to property.' " *S. California Gas Leak Cases*,

*supra,* 7 Cal. 5th at 398 (quotations omitted); see also Restatement (Third) of Torts: Liab. for Econ. Harm § 1 (2020) ("An economic loss or injury, as the term is used here, means a financial loss not arising from injury to the plaintiff's person or from physical harm to the plaintiff's property."). As Plaintiffs readily admit when defending their claim for damages, interference with the use and enjoyment of property is the depreciation in the rental value of the property during the relevant time. (Opposition at Section II.) Because Plaintiffs have not alleged physical property damage or personal injuries, their claims for depreciation of rental value is nothing more than financial loss not arising from an injury to Plaintiff's person or physical harm to his property, i.e., purely economic loss.

While Plaintiffs argue that their allegations of interference with use and enjoyment is a sufficient injury to support negligence claims, this proposition lacks any legal support. Plaintiff relies on *Acadia, California, Ltd. v. Herbert* (1960) 54 Cal. 2d 328, but this reliance is misplaced. Unlike Plaintiffs' negligence claims in this matter, the Plaintiff in *Acadia* was not asserting a negligence claim **but instead an intentional tort, and he alleged personal injuries resulting from defendant's actions**. As a result, the court did not address whether interference with use and enjoyment of property was an economic loss or could be recoverable under a negligence theory. At most, the case can be interpreted to allow such damages in the context of trespass and nuisance claims but not a negligence claim.

Additionally, Plaintiffs argue that California Civil Code section 1714(a) [the negligence statute] does not contain a "physical injury requirement." The California Supreme Court has held otherwise. *Southern California Gas Leak Cases* are recent, controlling, and cannot be distinguished by Plaintiffs. There the California Supreme Court discussed at length California's approach to negligence and determined that section 1714 "does not . . . impose a presumptive duty of care to guard against any conceivable harm that a negligent act might cause." 7 Cal. 5th at 399. The Court reiterated decisively that the general rule in California is "no-recovery for negligently inflicted purely economic losses." (*Id.* at 400.) The only exception the court noted was where the plaintiff and defendant have a "special relationship" (which Plaintiffs have not alleged). The Court did not distinguish between negligence claims involving products liability,

contractual issues, or interference with use and enjoyment of private property.  Rather, in setting "meaningful limits on liability" in tort law, the Court focused on whether the loss was purely economic: while "foreseeability 'may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm.'" (*Id*. At 401 citing *Bily v. Arthur Young & Co.* (1992) 3 Cal. 4th 370, 398.)

The Court also upheld the economic loss rule because of the "line-drawing problems" that arise for determining whether to impose liability when there is no physical damage alleged with the economic loss. Faced with a seemingly random five-mile boundary for Plaintiffs' claims in that case, the court explained that it discerned "no compelling basis for us to let a business operating 4.9 miles away recover its lost profits but deny such recovery to another business operating 5.1 miles away." (*Id*. at 408.)   This same reasoning applies here. The California Supreme Court has rejected an ad hoc standard for negligence claims and imposed a hard-and-fast rule that purely economic losses are not recoverable in negligence. (*Id*. at 410.)

Plaintiffs generally may seek recovery for interference with use and enjoyment of their property under a nuisance theory, but they cannot use that nuisance claim to bootstrap a negligence claim that seeks only economic losses.  Because Plaintiffs have not alleged to have incurred any physical injuries or property damage from the alleged odors, they cannot sustain a claim for negligence.

### C.  Plaintiffs' Class Action Allegations Should be Stricken.

Plaintiffs do not cite any federal decision that has granted a plaintiff's motion to certify a class in a case alleging harm stemming only from interference with use and enjoyment of property due to emissions of odors. In the Opposition, Plaintiffs fail to grapple with the overwhelming body of federal case law denying certification in similar putative class actions (see Motion at 12-17), instead invoking inapplicable state court decisions, classes "certified" for settlement purposes only, and one readily distinguishable federal court decision. [1]  Where there is no possibility that a plaintiff will be able to demonstrate that common issues of law and fact predominate, and no

---

[1] Plaintiffs have failed to mention counsel's less successful attempts wit California courts. In *Weiner v. Aerocraft Heat Treating Company, Inc. et al.* (Los Angeles Superior Court Case No. BC652102.), the court denied class-certification after a lengthy and costly discovery exercise. Attached hereto as Exhibit A is a true and correct copy of that order.

possibility that the class is ascertainable, striking the class allegations is appropriate. See e.g. *Stearns v. Select Comfort Retail Corp*. (N.D. Cal. 2010) 763 F. Supp. 2d 1128, 1152-53; *Tietsworth v. Sears* (N.D. Cal. 2010) 720 F. Supp. 2d 1123, 1147 (striking class allegations because proposed class was not ascertainable); *Sandoval v. Ali* (N.D. Cal. 2014) 34 F. Supp. 3d 1031, 1043–44 (striking class allegations due to overbreadth).  Plaintiffs' arguments are not convincing.

The single federal case to which Plaintiffs cites demonstrates the inherent roadblocks in certifying a class alleging odors alone. *Olden v. LaFarge Corp.* was a putative class action against a cement manufacturing plant alleging personal injuries caused by toxic emissions and physical property damage including properties being "regularly covered in cement dust." (*Olden v. LaFarge Corp.* (6th Cir. 2004) 383 F.3d 495, 508.) Affirming the lower court's certification of the class, the Sixth Circuit explained why certification was proper in that case as opposed to one alleging impacts from odors alone, citing to *Ramik v. Darling International Incorporated* (E.D. Mich. 1999) 60 F. Supp. 2d 680. The *Olden* court noted that the decision to deny certification of a damages class in Ramik was based, in part, on the fact that "substantial individual proofs related to the character of the odors at each individual residence" would have been required to establish liability to plaintiff and each class member. (*Id*. at 509 citing *Ramik v. Darling Int'l, Inc*. (E.D. Mich. 1999) 60 F. Supp. 2d 680, 682 ("This court declined to certify a plaintiff class for damages . . . because the resident plaintiffs were unable to demonstrate that common issues of law and fact predominated among the claims of the individual members of the purported class.").)  In *Olden*, on the other hand, "the plaintiffs' complaints are more objective, and experts will likely be able to estimate how much cement dust has fallen over each residence and the potential health effects associated with such quantity of dust." *Olden, supra,* 383 F.3d 509–10. Plaintiffs here have provided no such objective allegations that might otherwise support certification of a class.

## CONCLUSION

Based on the forgoing, NJFC respectfully requests that this Court grant the Motions.

////

////

Dated: May 30, 2025                    COLEMAN & HOROWITT, LLP

By: _____
STEVEN C. CLARK
DAVID J. WEILAND
 Attorneys for Defendant, NEIL JONES
FOOD COMPANY, dba SAN BENITO
FOODS

REPLY TO PLAINTIFF'S OPPOSITION

Exhibit A

**ORIGINAL**

1 | LATHAM & WATKINS LLP
Michael G. Romey (State Bar No. 137993)
2 |    *michael.romey@lw.com*
Jamie L. Sprague (State Bar No. 287689)
3 |    *jamie.sprague@lw.com*
Joseph L. De Leon (State Bar No. 313471)
4 |    *joseph.deleon@lw.com*
355 South Grand Avenue, Suite 100
5 | Los Angeles, California 90071-1560
Telephone: +1 213.485.1234
6 | Facsimile: +1 213.891.8763

**FILED**
Superior Court of California
County of Los Angeles

**RECEIVED**
LOS ANGELES SUPERIOR COURT JAN 3 1 2019

JAN 29 2019  Sherri R. Carter, Executive Officer/Clerk
by *Michael Rivera*, Deputy
Michael Rivera

S. DREW

7 | *Attorneys for Defendants Aerocraft Heat Treating*
*Company, Inc., Carlton Forge Works, Inc., and Press*
8 | *Forge Company*

9 | **(See next page for additional counsel)**

10 |                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 |                              **COUNTY OF LOS ANGELES**

12 | ALLISON WEINER, et al.,                          Case No. BC652102

13 |              Plaintiffs,                         Related Cases: BC644520, BC650094, BC651485

14 |     v.                                           Action Filed:  February 28, 2017
                                                     Judge:         Honorable Elihu M. Berle
15 | AEROCRAFT HEAT TREATING                          Department:    6
COMPANY, INC.; ANAPLEX
16 | CORPORATION; CARLTON FORGE                       **[PROPOSED ORDER] RE:**
WORKS, INC.; WEBER METALS,
17 | INC.; MATTCO FORGE, INC.;                        **(1) PLAINTIFFS' MOTION FOR CLASS**
PRESS FORGE COMPANY;                             **CERTIFICATION;**
18 | LUBECO, INC.; and DOES 1 through
300, inclusive,                                  **(2) PLAINTIFFS' REQUEST FOR JUDICIAL**
19 |                                                  **NOTICE IN SUPPORT OF MOTION FOR CLASS**
                                                     **CERTIFICATION;**
20 |              Defendants.
                                                     **(3) CERTAIN DEFENDANTS' MOTION TO**
21 |                                                  **EXCLUDE DECLARATION OF DR. RANDALL**
                                                     **BELL;**
22 |
                                                     **(4) DEFENDANT MATTCO FORGE, INC.'S**
23 |                                                  **EVIDENTIARY OBJECTIONS TO PLAINTIFFS'**
                                                     **REQUEST FOR JUDICIAL NOTICE**
24 |
                                                     **(5) CERTAIN DEFENDANTS' REQUEST FOR**
25 |                                                  **JUDICIAL NOTICE; and**

26 |                                                  **(6) PLAINTIFFS' REQUEST FOR JUDICIAL**
                                                     **NOTICE IN SUPPORT OF PLAINTIFFS' REPLY**
27 |                                                  **MEMORANDUM FILED IN SUPPORT OF**
                                                     **PLAINTIFFS' MOTION FOR CLASS**
28 |                                                  **CERTIFICATION**



LATHAM&WATKINS™ US-DOCS\105365189.4
ATTORNEYS AT LAW
LOS ANGELES

[PROPOSED ORDER]

1    KUTAK ROCK LLP
     Jad T. Davis (State Bar No. 219947)
2        jad.davis@kutakrock.com
     Kevin J. Grochow (State Bar No. 288586)
3        kevin.grochow@kutackrock.com
     5 Park Plaza, Suite 1500
4    Irvine, CA 92614-8595
     Telephone: +1 949.417.0999
5    Facsimile: +1 949.417.5394

6    *Attorneys for Defendant Mattco Forge, Inc.*

7    RUTAN & TUCKER, LLP
     Mark B. Frazier (State Bar No. 107221)
8        mfrazier@rutan.com
     Lucas Hori (State Bar No. 294373)
9        lhori@rutan.com
     611 Anton Boulevard, 14th Floor
10   Costa Mesa, CA 92626
     Telephone: +1 714.641.5100
11   Facsimile: +1 714.546.9035

12   *Attorneys for Defendant Weber Metals Inc.*

13   CLARK HILL LLP
     Christopher G. Foster (State Bar No. 119142)
14       cfoster@clarkhill.com
     1055 West Seventh Street, Suite 2400
15   Los Angeles, CA 90017
     Telephone: +1 213.891.9100
16   Facsimile: +1 213.488.1178

17   *Attorney for Defendant Lubeco, Inc.*

18

19

20

21

22

23

24

25

26

27

28

1       Plaintiffs' Motion for Class Certification; Plaintiffs' Requests for Judicial Notice in

2   Support of Plaintiffs' Motion for Class Certification; Certain Defendants'[1] Motion to Exclude the

3   Declaration of Dr. Randall Bell; Defendant Mattco Forge, Inc.'s Evidentiary Objections to

4   Plaintiffs' Request for Judicial Notice; Certain Defendants'[2] Request for Judicial Notice in Support

5   of (1) Joint Opposition to Plaintiffs' Motion for Class Certification and (2) Defendant Carlton

6   Forge Works, Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Regarding the

7   Norman Class); and Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Reply

8   Memorandum Filed in Support of Plaintiffs' Motion for Class Certification were heard before this

9   Court on January 14, 2019, the Honorable Elihu M. Berle presiding.  All appearances were made

10  on the record.

11      For the reasons set forth at the hearing as memorialized in the court reporter's transcript

12  attached hereto as <u>Exhibit A</u>, as well as the Court's minute order attached hereto as <u>Exhibit B</u>, the

13  Court ordered the following:

14      1. Plaintiffs' Motion for Class Certification is **DENIED**.

15      2. Plaintiffs' Request for Judicial Notice in Support of Motion for Class Certification

16        is **DENIED**.

17      3. Certain Defendants' Motion to Exclude the Declaration of Dr. Randall Bell is

18        **DENIED**.

19      4. Defendant Mattco Forge, Inc.'s Evidentiary Objections to Plaintiffs' Request for

20        Judicial Notice are **GRANTED.**

21      5. Certain Defendants' Request for Judicial Notice in Support of (1) Joint Opposition

22        to Plaintiffs' Motion for Class Certification and (2) Defendant Carlton Forge

23        Works, Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Regarding

24        the Norman Class) is **GRANTED IN PART**, and the Court takes judicial notice

25

26  [1]     Defendants Aerocraft Heat Treating Company, Inc. ("Aerocraft), Carlton Forge Works,
Inc. ("Carlton Forge"), Press Forge Company ("Press Forge"), Weber Metals, Inc. ("Weber")
27  and Lubeco, Inc.'s ("Lubeco,") filed the Motion to Exclude.

28  [2]     Defendants, Aerocraft, Carlton Forge, Press Forge, Weber, Lubeco, and Mattco Forge,
Inc. ("Mattco") filed the Request for Judicial Notice.

1    of Exhibits 1, 2, 3, 10, and 11 thereto.  Otherwise, the Certain Defendants' Request

2    for Judicial Notice is **DENIED.**

3    6. Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Reply Memorandum

4    Filed in Support of Plaintiffs' Motion for Class Certification is **DENIED.**

5    7. *Katherine Craig, et al. v. Aerocraft Heat Treating Company, Inc. et. al.*, Los

6    Angeles County Superior Court Case No. 18STCV03833 and *Allison Weiner, et*

7    *al. v. Aerocraft Heat Treating Company, Inc. et al.*, Los Angeles County Superior

8    Court Case No. BC652102 are related within the meaning of CRC 3.300(a) and

9    transferred to Judge Elihu M. Berle in Department 6 at Spring Street Courthouse.

10    8. Plaintiffs Julian Sosa Jr. and Julian Sosa III's claims are dismissed without

11    prejudice.

12    9. The final status conference scheduled for January 28, 2019, and non-jury trial

13    scheduled for February 25, 2019 are vacated.

14    10. The Parties to the *Weiner* and *Calzada* actions are to meet and confer and submit

15    a joint report no later than March 7, 2019.  The joint report is to address the

16    following:

17        a.  status of discovery;

18        b.  a proposed date for setting the case for trial; and

19        c.  trial manageability issues

20    11. The next status conference be set for March 14, 2019 at 9:00 a.m.

21    12. Defendants are to give notice.

22

23    **IT IS SO ORDERED.**

24    Dated:  1|31|19        By

25                             Honorable Elihu M. Berle

26                             Judge of the Superior Court

27

28

02/08/2016

**EXHIBIT A**

1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 6                    HON. ELIHU M. BERLE, JUDGE

ALLISON WEINER, ET AL.,        )
                               )
          PLAINTIFFS,          )
                               )
     vs.                       )  No. BC652102
                               )  (CONSOLIDATED WITH
AEROCRAFT HEAT TREATING        )  CASE NO. BC677134)
COMPANY, INC., ET AL.,         )
                               )  RELATED CASES: BC644520,
               DEFENDANTS.     )  BC650094, BC651485
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, JANUARY 14, 2019

APPEARANCES:

FOR PLAINTIFFS:           GIRARDI KEESE
                          BY:  ROBERT FINNERTY, ESQ.
                          BY:  JOSEPH FINNERTY, ESQ.
                          BY:  MICHAEL KELLY, ESQ.
                          1126 WILSHIRE BOULEVARD
                          LOS ANGELES, CALIFORNIA  90017

FOR DEFENDANTS
AEROCRAFT HEAT
TREATING COMPANY,
INC., CARLTON FORGE
WORKS, INC., AND
PRESS FORGE COMPANY:      LATHAM & WATKINS
                          BY:  MICHAEL ROMEY, ESQ.
                          BY:  JAMIE SPRAGUE, ESQ.
                          BY:  JOSEPH DE LEON, ESQ.
                          355 SOUTH GRAND AVENUE
                          SUITE 100
                          LOS ANGELES, CALIFORNIA  90071


                          LAURIE HELD-BIEHL, CSR NO. 6781
                          STIPULATED REPORTER PRO TEMPORE

```
 1    APPEARANCES (CONTINUED):

 2

 3    FOR DEFENDANT ANAPLEX
      CORPORATION:               CASTELLON & FUNDERBURK, LLP
 4                               BY:  ALASTAIR HAMBLIN, ESQ.
                                 811 WILSHIRE BOULEVARD
 5                               SUITE 1025
                                 LOS ANGELES, CALIFORNIA  90017
 6

 7    FOR DEFENDANT WEBER
      METALS, INC.:              RUTAN & TUCKER, LLP
 8                               BY:  MARK FRAZIER, ESQ.
                                 BY:  LUCAS HORI, ESQ.
 9                               611 ANTON BOULEVARD
                                 SUITE 1400
10                               COSTA MESA, CALIFORNIA  92626

11    FOR DEFENDANT
      MATTCO FORGE, INC.:        KUTAK ROCK, LLP
12                               BY:  JAD DAVIS, ESQ.
                                 BY:  JOHN-MARK JENNINGS, ESQ.
13                               5 PARK PLAZA
                                 SUITE 1500
14                               IRVINE, CALIFORNIA  92614-8595

15    FOR DEFENDANT
      LUBECO, INC.:              CLARK HILL, PLC
16                               ATTORNEYS AT LAW
                                 BY:  CHRISTOPHER G. FOSTER, ESQ.
17                               1055 WEST SEVENTH STREET
                                 SUITE 2400
18                               LOS ANGELES, CA 90017

19    FOR THE PLAINTIFFS
      ERMA CALZADA, ET AL.,
20    CASE NO. TC028875:         WEBB LAW GROUP, APC
                                 ATTORNEYS AT LAW
21                               BY:  LENDEN WEBB, ESQ.
                                 10509 VISTA SORRENTO PKWY
22                               SUITE 430
                                 SAN DIEGO, CALIFORNIA 92121
23                               (VIA COURTCALL.)

24

      FOR THE PLAINTIFF
25    CENTER FOR
      ENVIRONMENTAL HEALTH:      LEXINGTON LAW GROUP
26                               BY:  LUCAS WILLIAMS, ESQ.
                                 503 DIVISADERO STREET
27                               SAN FRANCISCO, CALIFORNIA  94117
                                 (VIA COURTCALL.)

28
```

```
1    CASE NUMBER:            BC652102

2    CASE NAME:              WEINER, ET AL. V AEROCRAFT, ET AL.

3    LOS ANGELES, CA         MONDAY, JANUARY 14, 2019

4    DEPARTMENT 6            HON. ELIHU M. BERLE, JUDGE

5    REPORTER:               LAURIE HELD-BIEHL, CSR NO. 6781

6    TIME:                   A.M. SESSION

7    APPEARANCES:            AS HERETOFORE NOTED.

8

9          THE COURT:  MORNING, COUNSEL.

10               (VARIOUS GOOD MORNINGS.)

11         THE COURT:  CALLING THE CASE OF WEINER VERSUS

12   AEROCRAFT HEAT TREATMENT COMPANY.

13               COUNSEL, YOUR APPEARANCES.

14         MR. ROBERT FINNERTY:  GOOD MORNING, YOUR HONOR.

15   BOB FINNERTY FOR THE PLAINTIFF.

16         THE COURT:  GOOD MORNING.

17         MR. JOSEPH FINNERTY:  GOOD MORNING, YOUR HONOR.

18   JOSEPH FINNERTY FOR THE PLAINTIFF.

19         THE COURT:  GOOD MORNING.

20         MR. KELLY:  MORNING, YOUR HONOR.  MICHAEL KELLY

21   FOR THE PLAINTIFF.

22         MR. WANG:  MORNING, YOUR HONOR.  ARNOLD WANG,

23   ARIAS SANGUINETTI, ON BEHALF OF THE EGLOSSIREE NORMAN

24   PUTATIVE CLASS.

25         THE COURT:  GOOD MORNING.

26         MR. ROMEY:  GOOD MORNING, YOUR HONOR.  MICHAEL

27   ROMEY FOR AEROCRAFT, PRESS FORGE AND CARLTON FORGE,

28   DEFENDANTS.
```

4

```
1          MR. HAMBLIN:  MORNING, YOUR HONOR.  ALASTAIR

2    HAMBLIN FOR ANAPLEX CORPORATION, DEFENDANT.

3          THE COURT:  GOOD MORNING.

4          MR. FRAZIER:  GOOD MORNING, YOUR HONOR.  MARK

5    FRAZIER FOR WEBER METALS.

6          THE COURT:  GOOD MORNING.

7          MR. DAVIS:  GOOD MORNING, YOUR HONOR.  JAD DAVIS

8    ON BEHALF OF MATTCO FORGE.

9          THE COURT:  GOOD MORNING.

10         MR. FOSTER:  GOOD MORNING, YOUR HONOR.

11   CHRISTOPHER FOSTER ON BEHALF OF DEFENDANT LUBECO.

12         THE COURT:  GOOD MORNING.

13         MR. JENNINGS:  MORNING, YOUR HONOR.  JOHN-MARK

14   JENNINGS ON BEHALF OF MATTCO.

15         THE COURT:  GOOD MORNING.

16         MR. HORI:  GOOD MORNING, YOUR HONOR.  LUCAS HORI

17   ON BEHALF OF DEFENDANT WEBER METALS.

18         THE COURT:  GOOD MORNING.

19              ANYONE ELSE?  ANYONE ON COURTCALL?

20         THE CLERK:  NO COURTCALL APPEARANCES, YOUR HONOR.

21         THE COURT:  ALL RIGHT.  THANK YOU.

22              COUNSEL, PLEASE HAVE A SEAT AND MAKE

23   YOURSELVES COMFORTABLE.

24              I HAVE RECEIVED A PROPOSED ORDER FOR THE

25   APPOINTMENT OF MS. LAURIE HELD-BIEHL AS COURT REPORTER

26   PRO TEM.

27              ANY OBJECTIONS?

28         MR. ROBERT FINNERTY:  NO, YOUR HONOR.
```

```
 1        THE COURT:  NOT HEARING ANY OBJECTIONS,

 2   MS. HELD-BIEHL IS HEREBY APPOINTED COURT REPORTER PRO

 3   TEM.

 4            GOOD MORNING.

 5        THE REPORTER:  GOOD MORNING, YOUR HONOR.

 6        THE COURT:  ALL RIGHT.  THE MATTER IS HERE TODAY

 7   FOR HEARING ON THE MOTION FOR CLASS CERTIFICATION.

 8            ANYONE WISH TO BE HEARD?

 9            OKAY.

10   MR. ROMEY:  YOUR HONOR, MICHAEL ROMEY FOR CERTAIN

11   OF THE DEFENDANTS.

12            IF THE COURT HAS ANY QUESTIONS FOR THE

13   DEFENDANTS THAT HE WOULD LIKE TO HAVE ANSWERED, I'M

14   HAPPY TO DO SO; OTHERWISE, I THINK THE PAPERS ARE VERY

15   WELL DONE.

16        THE COURT:  ALL RIGHT.  THANK YOU.

17            ANYTHING ELSE?

18            ALL RIGHT.  THIS MAY TAKE A WHILE; SO I BEG

19   YOUR INDULGENCE AND PATIENCE.

20        THE CLERK:  YOUR HONOR, MAY I TRY COURTCALL REALLY

21   QUICK TO SEE IF THE PARTIES HAVE JOINED?

22            I APOLOGIZE.

23        THE COURT:  I'M SORRY?

24        THE CLERK:  I'M GOING TO SEE IF PARTIES JOINED

25   COURTCALL THAT WERE ON EARLIER.

26            DO I HAVE LUCAS WILLIAMS ON THE LINE?

27            THIS IS THE CLERK.  DO I HAVE LUCAS

28   WILLIAMS ON THE LINE?
```

```
1            THE COURT:  ANYONE APPEARING ON THE CASE OF --
2            MR. WILLIAMS:  YES.  LUCAS IS HERE.
3            THE COURT:  CALLING THE CASE OF WEINER VERSUS
4    AEROCRAFT.
5                  ANYONE ON COURTCALL APPEARING ON THAT CASE?
6                  ALL RIGHT.
7            MR. WEBB:  YOUR HONOR, DID YOU SAY CALZADA?
8            THE COURT:  YES.  CALZADA VERSUS AEROCRAFT, TOO.
9            MR. WEBB:  YES, YOUR HONOR.  THIS IS ATTORNEY
10   LENDEN WEBB, W-E-B-B, ON BEHALF OF THE PLAINTIFFS IN THE
11   CALZADA MATTER.
12           THE COURT:  GOOD MORNING.  ANYONE ELSE?
13                 ALL RIGHT.  THANK YOU.
14                 WITH REGARD TO THE MOTION FOR CLASS
15   CERTIFICATION FILED IN THE WEINER CASE, THIS LAWSUIT
16   ARISES FROM ALLEGED CHEMICAL EMISSIONS FROM SEVEN METAL
17   OPERATIONS COMPANIES IN PARAMOUNT, CALIFORNIA.  THE
18   DEFENDANTS ARE AEROCRAFT HEAT TREATMENT COMPANY, ANAPLEX
19   CORPORATION, CARLTON FORGE WORKS, MATTCO FORGE, WEBER
20   METALS, PRESS FORGE AND LUBECO.
21                 THERE WAS A SECOND ACTION INITIATED NAMING
22   CARLTON FORGE AS THE SOLE DEFENDANT ALLEGING TWO CAUSES
23   OF ACTION BASED ON NOXIOUS ODORS.
24                 ON MARCH 16, 2018 PLAINTIFFS ALLISON
25   WEINER, SUSAN WEINER AND EGLOSSIREE NORMAN FILED THE
26   OPERATIVE THIRD AMENDED COMPLAINT AGAINST SEVEN OF THE
27   DEFENDANTS.
28                 THE PLAINTIFFS ARE ALLEGEDLY NEARBY
```

1    RESIDENTS WHO CLAIM A VARIETY OF DAMAGES ON BEHALF OF

2    THEMSELVES AND OTHERS SIMILARLY SITUATED AS A RESULT OF

3    INJURIES AND EMISSIONS -- AS A RESULT OF INJURIES FROM

4    EMISSIONS FROM THE DEFENDANTS' PLANTS.

5            THE THIRD AMENDED COMPLAINT SEEKS RELIEF ON

6    BEHALF OF TWO PRIMARY CLASSES:  FIRST THE PROPERTY

7    DAMAGE CLASS RELATED TO ALLEGATIONS OF TOXIC EMISSIONS

8    FROM ALL SEVEN DEFENDANTS; AND A NORMAN CLASS RELATED TO

9    ONLY THE NOXIOUS ODOR CLAIMS AGAINST CARLTON FORGE.

10            THE PLAINTIFFS HAVE FILED A MOTION FOR

11    CLASS CERTIFICATION.  IN THAT MOTION, THE PLAINTIFFS

12    SEEK TO REPRESENT THE PUTATIVE CLASS AND SEEK TO CERTIFY

13    SEVERAL PROPOSED CLASSES AND SUBCLASSES.

14            THERE'S A PROPERTY DAMAGE CLASS DESCRIBED

15    AS "ALL PERSONS WHO OWNED RESIDENTIAL PROPERTY IN THE

16    CITY OF PARAMOUNT WITHIN" -- "AND WITHIN A ONE-MILE

17    RADIUS FROM DEFENDANT LUBECO," FOR WHICH THE COMPLAINT

18    ALLEGES THAT THEY "SUFFERED DAMAGE DUE TO DEFENDANTS'

19    COMBINED AND/OR COMMINGLED EMISSIONS OF HEXAVALENT

20    CHROMIUM."

21            THERE'S A SINGLE-FAMILY RESIDENTIAL

22    SUBCLASS, AGAIN DESCRIBED AS "ALL PERSONS WHO OWN

23    SINGLE-FAMILY RESIDENTIAL PROPERTY IN THE CITY OF

24    PARAMOUNT AND WITHIN ONE-MILE RADIUS FROM DEFENDANT

25    LUBECO" -- "LUBECO."

26            THERE'S A MOBILE HOME PARK SUBCLASS

27    DESCRIBED "AS ALL PERSONS WHO OWN MOBILE PROPERTY" --

28    "HOME PROPERTIES IN THE CITY OF PARAMOUNT WITHIN ONE

1    MILE OF" -- "RADIUS OF THE DEFENDANT LUBECO."

2            AND THERE'S A TOWNHOUSE AND CONDO SUBCLASS

3    DESCRIBED AS "ALL PERSONS WHO OWN TOWNHOUSE, CONDOMINIUM

4    OR APARTMENT PROPERTY IN THE CITY OF PARAMOUNT AND

5    WITHIN ONE-MILE RADIUS OF DEFENDANT LUBECO."

6            AND THERE'S THE NORMAN CLASS DESCRIBED AS

7    "ALL OWNERS AND/OR OCCUPANTS AND/OR RENTERS OF

8    RESIDENTIAL PROPERTY WITHIN ONE MILE OF DEFENDANT

9    CARLTON FORGE WORKS' FACILITY PROPERTY BOUNDARY, WHO

10   LIVED THERE THREE YEARS PRIOR TO FILING THE INITIAL

11   COMPLAINT."

12           PRELIMINARILY, PLAINTIFFS REQUEST THE COURT

13   TO TAKE JUDICIAL NOTICE OF 34 DOCUMENTS FILED IN SUPPORT

14   OF THEIR MOTION.  THE DOCUMENTS INCLUDE VARIOUS TEST

15   REPORTS IN THE DISTRICT, VARIOUS LETTERS FROM THE PUBLIC

16   HEALTH DEPARTMENT, VARIOUS NEWS RELEASES, WIND ROSE DATA

17   FROM THE CITY OF PARAMOUNT, CENSUS DATA, A PUBLIC HEALTH

18   DEPARTMENT FAQ PAGE.

19           AND DEFENDANTS REQUEST JUDICIAL NOTICE OF

20   13 DOCUMENTS IN SUPPORT OF THEIR OPPOSITION, INCLUDING

21   VARIOUS COURT FILINGS, GOOGLE LAW PRINTOUTS, A LETTER

22   FROM THE PARAMOUNT CITY COUNCIL, REPORT ON BUDGET.

23           AND ON REPLY, PLAINTIFFS REQUEST JUDICIAL

24   NOTICE OF FOUR ADDITIONAL DOCUMENTS, ALL HEALTH RISK

25   ASSESSMENTS INVOLVING ANAPLEX AND AEROCRAFT.

26           THE COURT MAY TAKE JUDICIAL NOTICE OF COURT

27   FILINGS, AND THAT IS THE FACT THAT THE DOCUMENTS HAVE

28   FILED, NOT FOR THE TRUTH OF THE MATTERS.

1              ALL OTHER DOCUMENTS, REQUESTS FOR JUDICIAL

2      NOTICE IS DENIED; THEY ALL CONTAIN HEARSAY INFORMATION.

3              IN THE CODE OF CIVIL PROCEDURE,

4      SECTION 382, CLASS ACTIONS ARE AUTHORIZED "WHEN THE

5      QUESTION IS ONE OF COMMON OR GENERAL INTEREST, OF MANY

6      PERSONS, OR WHEN THE PARTIES ARE NUMEROUS AND IT IS

7      IMPRACTICABLE TO BRING THEM ALL BEFORE THE COURT."

8              THE SEMINAL CASE ON THE STANDARDS TO APPLY

9      TO CLASS ACTIONS CERTIFICATION IS THE SUPREME COURT

10     DECISION IN SAV-ON DRUGS VERSUS SUPERIOR COURT, 2004,

11     34 CAL. 4TH 319, IN WHICH THE SUPREME COURT STATED

12     "THE PARTY SEEKING CERTIFICATION HAS THE BURDEN OF

13     ESTABLISHING THE EXISTENCE OF BOTH AN ASCERTAINABLE

14     CLASS AND A WELL-DEFINED COMMUNITY OF INTEREST AMONG

15     CLASS MEMBERS.  THE 'COMMUNITY OF INTEREST' REQUIREMENT

16     EMBODIES THREE FACTORS:  (1) PREDOMINANT COMMON

17     QUESTIONS OF LAW OR FACT; (2) CLASS REPRESENTATIVES WITH

18     CLAIMS OR DEFENSES TYPICAL OF THE CLASS; AND (3) CLASS

19     REPRESENTATIVES WHO CAN ADEQUATELY REPRESENT THE CLASS."

20              THE SUPREME COURT CONTINUED.

21              "THE CERTIFICATION QUESTION IS 'ESSENTIALLY

22     A PROCEDURAL ONE THAT DOES NOT ASK WHETHER AN ACTION IS

23     LEGALLY OR FACTUALLY MERITORIOUS'.  A TRIAL COURT RULING

24     ON A CERTIFICATION MOTION DETERMINES 'WHETHER...THE

25     ISSUES WHICH MAY BE JOINTLY TRIED, WHEN COMPARED WITH

26     THOSE REQUIRING SEPARATE ADJUDICATION, ARE SO NUMEROUS

27     OR SUBSTANTIAL THAT THE MAINTENANCE OF A CLASS ACTION

28     WOULD BE ADVANTAGEOUS TO THE JUDICIAL PROCESS AND TO THE

1    LITIGANTS'."

2            THE SUPREME COURT CONTINUED.

3            "AS THE FOCUS IN A CERTIFICATION DISPUTE IS

4    ON WHAT TYPE OF QUESTIONS, COMMON OR INDIVIDUAL, ARE

5    LIKELY TO ARISE IN THE ACTION, RATHER THAN ON THE MERITS

6    OF THE CASE, IN DETERMINING WHETHER THERE IS SUBSTANTIAL

7    EVIDENCE TO SUPPORT A TRIAL COURT'S CERTIFICATION ORDER,

8    WE CONSIDER WHETHER THE THEORY OF RECOVERY ADVANCED BY

9    THE PROPONENTS OF CERTIFICATION IS, AS AN ANALYTICAL

10    MATTER, LIKELY TO PROVE AMENABLE TO CLASS TREATMENT."

11            AND "REVIEWING COURTS CONSISTENTLY LOOK TO

12    THE ALLEGATIONS OF THE COMPLAINT AND THE DECLARATIONS OF

13    THE ATTORNEYS REPRESENTING THE PLAINTIFF CLASS TO

14    RESOLVE THIS QUESTION."

15            SO ADDRESSING THE FACTORS WHICH THE COURT

16    MAY AND MUST CONSIDER ON A MOTION FOR CLASS

17    CERTIFICATION, FIRST WE HAVE THE ISSUE OF

18    ASCERTAINABILITY OF NUMEROSITY.  THE CLASS MUST BE

19    ASCERTAINABLE AND IT MUST BE SUFFICIENTLY NUMEROUS.

20            WHEN DETERMINING WHETHER A CLASS IS

21    ASCERTAINABLE, THE COURT LOOKS AT, FIRST, THE CLASS

22    DEFINITION; SECONDLY, THE SIZE OF THE CLASS; AND, THIRD,

23    THE MEANS AVAILABLE FOR IDENTIFYING THE CLASS MEMBERS,

24    CITING REYES VERSUS SAN DIEGO COUNTY BOARD OF

25    SUPERVISORS, 1987, 196 CAL. APP. 3RD 1263.

26            AN ASCERTAINABLE CLASS IS CHARACTERIZED BY

27    A CLEAR, OBJECTIVE DEFINITION.  SUFFICIENT RECORDS MUST

28    BE AVAILABLE TO IDENTIFY CLASS MEMBERS AT THE REMEDIAL

1    STAGE.

2              AT THE THRESHOLD, THE COURT NOTES THAT

3    PLAINTIFFS' PROPOSED PROPERTY DAMAGE CLASS DEFINITION

4    LACKS PRECISION.  THE DEFINITION STATES, IN RELEVANT

5    PART, QUOTE, "ALL PERSONS WHO OWN RESIDENTIAL PROPERTY

6    IN THE CITY OF PARAMOUNT AND WITHIN A ONE-MILE RADIUS

7    FROM DEFENDANT LUBECO, INC."

8              ON ITS FACE, THE DEFINITION WOULD INCLUDE

9    ONLY THOSE PROPERTIES THAT ARE BOTH WITHIN THE CITY OF

10   PARAMOUNT AND WITHIN ONE MILE OF LUBECO; HOWEVER, THE

11   GEOGRAPHICAL REGION SET FORTH IN THE MAP ATTACHED TO THE

12   FINNERTY DECLARATION SUGGESTS THAT PLAINTIFFS INTENDED

13   TO DEFINE THE CLASS OF OWNERS OF PROPERTY WITHIN THE

14   CITY OF PARAMOUNT OR WITHIN ONE MILE OF LUBECO.

15             BUT SETTING ASIDE THAT AMBIGUITY, THE COURT

16   WILL ADDRESS WHETHER THE PARTIES' REFERENCE TO

17   GEOGRAPHICAL BOUNDARIES IN THE INCLUDED MAP ARE

18   SUFFICIENT TO ESTABLISH ASCERTAINABILITY.

19             DEFENDANTS ARGUE THAT THE GEOGRAPHIC REGION

20   IS ARBITRARY AND THE PLAINTIFFS FAIL TO MEET THEIR

21   BURDEN TO ESTABLISH ASCERTAINABILITY.

22             THE DEFENDANTS RELY ON THE CASE OF BROOKS

23   VERSUS DARLING INTERNATIONAL FROM THE EASTERN DISTRICT

24   OF CALIFORNIA, REPORTED IN WESTLAW AT 1198542, PAGE 7,

25   AND THE CASE OF AKKERMAN VERSUS MECTA CORP, 2007,

26   152 CAL. APP. 4TH 1094 AT 1100, FOR THE PROPOSITION THAT

27   PLAINTIFFS MUST ESTABLISH A "REASONABLE RELATIONSHIP

28   BETWEEN THE PROPOSED BOUNDARY AND THE DEFENDANTS'

1    ALLEGEDLY HARMFUL ACTIVITIES" BY SUBMITTING "SCIENTIFIC

2    OR OBJECTIVE EVIDENCE WHICH CLOSELY TIES THE SPREAD OF

3    THE ALLEGED POLLUTION OR CONTAMINATION TO THE PROPOSED

4    CLASS BOUNDARIES."

5              IN REPLY, PLAINTIFFS ATTEMPT TO DISTINGUISH

6    THE BROOKS CASE BY REASONING HOW FEDERAL LAW REQUIRES

7    COURTS TO CONSIDER THE MERITS OF CLASS CERTIFICATION

8    MOTION BUT IN CALIFORNIA COURTS MAY NOT CONSIDER THE

9    MERITS OF THE ACTION AT THE CERTIFICATION STAGE.

10             PLAINTIFFS ARGUE THAT RELIANCE ON THE

11   BROOKS CASE WOULD RESULT IN THIS COURT IMPROPERLY

12   CONSIDERING THE MERITS.  AND IN ANY EVENT, PLAINTIFFS

13   HAVE PRESENTED EVIDENCE THAT SUPPORTS THE CONTENTION

14   THAT PLAINTIFFS' PROPERTIES WITHIN THE SPECIFIED

15   BOUNDARY HAVE BEEN CONTAMINATED BY DEFENDANTS' CONDUCT

16   IN A UNIFORM WAY THAT IS IDEAL FOR CLASS CERTIFICATION.

17             FIRST, THE COURT NOTES ON PLAINTIFFS'

18   PROPOSITION THAT A CALIFORNIA COURT WILL NOT DETERMINE

19   THE MERITS OF THE CASE AT THE CLASS CERTIFICATION,

20   ALTHOUGH IT IS GENERALLY TRUE, IT IS NOT AN ABSOLUTE

21   ACCURATE STATEMENT.

22             CALIFORNIA COURTS HAVE RECOGNIZED THAT

23   "ISSUES AFFECTING THE MERITS OF THE CASE MAY BE ENMESHED

24   WITHIN CLASS ACTION REQUIREMENTS."  FOR EXAMPLE, THE

25   BRINKER CASE, BRINKER VERSUS SUPERIOR COURT, 2012,

26   53 CAL. 4TH 1004.  AND THAT IS "WHEN EVIDENCE OR LEGAL

27   ISSUES GERMANE TO THE CERTIFICATION QUESTION BEAR AS

28   WELL ON ASPECTS OF THE MERITS, A COURT MAY PROPERLY

1   EVALUATE THEM."

2               IN ANY EVENT, A GENERAL RELIANCE ON THE

3   PRINCIPLES ANNUNCIATED IN BROOKS DOES NOT REQUIRE THIS

4   COURT TO MAKE ANY MERITS DETERMINATION AT THIS STAGE.

5               AND PLAINTIFFS MAKING THE DISTINCTION FROM

6   THE BROOKS CASE DOES NOT ABSOLVE PLAINTIFFS OF THE

7   BURDEN TO OFFER EVIDENCE SHOWING HOW PLAINTIFFS CAN

8   ASCERTAIN THE CLASS MEMBERS WHOSE PROPERTY VALUES WERE

9   AFFECTED BY THE ALLEGED CONTAMINANTS EMITTED BY

10  DEFENDANTS AND THEREBY PROPERLY DEFINE THE CLASS.

11              IT IS THAT ANALYSIS WHERE THE BROOKS CASE

12  IS PARTICULARLY INSTRUCTIVE AS BROOKS DEALT WITH THE

13  ASCERTAINABILITY ISSUE IN TERMS OF THE DEFINITENESS.

14              IN THE BROOKS CASE, THE DEFENDANT OPERATED

15  AN ANIMAL PROCESSING FACILITY LOCATED IN THE MIDDLE OF

16  AN INDUSTRIAL AREA.  PLAINTIFFS, WHO SOUGHT TO REPRESENT

17  PROFESSIONAL OWNERS AND OCCUPIERS IN THE NEIGHBORHOOD,

18  FILED SUIT AGAINST DEFENDANT FOR INFUSING THE

19  NEIGHBORHOOD WITH NOXIOUS ODORS.

20              PLAINTIFFS FILED A MOTION TO CERTIFY A

21  CLASS OF OWNER/OCCUPIERS WHO LIVED WITHIN A

22  ONE-AND-A-HALF-MILE RADIUS FROM DEFENDANT'S FACILITY.

23  THE BROOKS PLAINTIFFS ARGUE THAT THE CLASS MEMBERS ARE

24  CERTAINLY ASCERTAINABLE BASED UPON THEIR PROPOSED

25  ONE-AND-A-HALF-MILE RADIUS CLASS DEFINITION.

26              DEFENDANT ESSENTIALLY ARGUED THAT, IN A

27  LITERAL SENSE, RESIDENTS WITHIN A ONE-AND-A-HALF-MILE

28  RADIUS WOULD BE ASCERTAINABLE; HOWEVER, SIMPLY STAKING

1  OUT A GEOGRAPHIC RADIUS DOES NOT MEET THE BURDEN OF

2  ASCERTAINABILITY IF THE GEOGRAPHIC AREA BEARS NO

3  REASONABLE RELATIONSHIP TO THE HARM ALLEGED.  THE

4  DEFENDANT CONTENDED THAT PLAINTIFFS DID NOT MEET THAT

5  BURDEN AS "THE ONE-AND-A-HALF-MILE RADIUS IS BASELESS,

6  IMPROPER AND PURELY SPECULATIVE," RESULTING IN A CLASS

7  DEFINITION WHICH IS OVERBROAD AND, THUS, NOT

8  ASCERTAINABLE.

9          THE BROOKS COURT AGREED WITH THE DEFENSE,

10 FINDING THAT THE CLASS WAS NOT ASCERTAINABLE AND DENYING

11 CERTIFICATION.

12          THE COURT FIRST NOTED THAT THE

13 ASCERTAINABILITY DETERMINATION IS "MEANT TO ENSURE THE

14 PROPOSED CLASS DEFINITION WILL ALLOW THE COURT TO

15 EFFICIENTLY AND OBJECTIVELY ASCERTAIN WHETHER A

16 PARTICULAR PERSON IS A CLASS MEMBER."

17          THE COURT NEXT NOTED THAT "AN ADEQUATE

18 BASIS FOR A PROPOSED CLASS DEFINITION IS UNIQUELY

19 IMPORTANT IN CLASS ACTION CASES PRESENTING TOXIC TORT OR

20 NUISANCE CLAIMS BASED ON AN ALLEGED ENVIRONMENTAL HARM."

21          CITING TO VARIOUS FEDERAL CASES FROM AROUND

22 THE COUNTRY, INCLUDING FROM THE CENTRAL DISTRICT OF

23 CALIFORNIA, THE COURT OFFERED THE FOLLOWING FRAMEWORK,

24 QUOTE, "OFTEN AN OBJECTIVE CHARACTERIZATION OF EXPOSURE

25 TO A PARTICULAR SUBSTANCE DEFINES CLASS MEMBERS.  OTHER

26 TIMES, COURTS DEFINE CLASSES BY GEOGRAPHICAL BOUNDARIES,

27 BUT IN SUCH CIRCUMSTANCES, COURTS OFTEN SEEK A

28 REASONABLE RELATIONSHIP BETWEEN THE PROPOSED BOUNDARY

1    AND THE DEFENDANTS' ALLEGED HARMFUL ACTIVITIES.

2    REGARDLESS, COURTS HAVE REJECTED PROPOSED CLASSES WHERE

3    PLAINTIFFS FAILED TO 'IDENTIFY ANY LOGICAL REASON...FOR

4    DRAWING THE BOUNDARIES WHERE THEY DID.  USUALLY,

5    SCIENTIFIC OR OBJECTIVE EVIDENCE CLOSELY TIES THE SPREAD

6    OF THE ALLEGED POLLUTION OR CONTAMINATION TO THE

7    PROPOSED CLASS BOUNDARIES'."

8         THE BROOKS COURT APPLIED THIS FRAMEWORK TO

9    THE FACTS OF THE CASE, FINDING THAT THE

10   "ONE-AND-A-HALF-MILE RADIUS ASPECT OF THE CLASS

11   DEFINITION HAS NO ACCEPTABLE BASIS IN OBJECTIVE FACT AND

12   IS THEREFORE ARBITRARY."

13        THE COURT REASONED THAT "NOTHING IN THE

14   EXPERT REPORTS BEFORE THE COURT INDICATES ANY RATIONALE

15   BEHIND PLAINTIFFS' CHOOSING OF A ONE-AND-A-HALF-MILE

16   RADIUS AS THE GEOGRAPHIC BOUNDARY FOR THE PROPOSED

17   CLASS."

18        THE COURT CONTINUED, QUOTE, "PLAINTIFFS'

19   COUNSEL BASED THE DEFINITION OF THE CLASS NOW PROPOSED

20   FOR CERTIFICATION, NOT UPON ANY PRELIMINARY FINDING MADE

21   BY THEIR EXPERTS OR UPON A THOROUGH ANALYSIS OF A

22   DETAILED SURVEY OF THOSE POSSIBLY IMPACTED AREAS, BUT

23   RATHER UPON THEIR OWN INTERPRETATION OF THE LIMITED

24   INFORMATION AVAILABLE TO THEM."

25        THE PRINCIPLES OF THE BROOKS CASE WERE ALL

26   SUPPORTED BY THOMPSON VERSUS AUTOMOBILE CLUB OF SOUTHERN

27   CALIFORNIA, 2013, 217 CAL. APP. 4TH 719.

28        IN THIS CASE, PLAINTIFFS HAVE FAILED TO

1   SUBMIT ANY SCIENTIFIC EVIDENCE, OR ANY EVIDENCE AT ALL,

2   SUPPORTING THE ARBITRARY GEOGRAPHICAL BOUNDARIES OF THE

3   PROPOSED CLASS.  INSTEAD OF PROVIDING SUCH EVIDENCE, THE

4   PLAINTIFFS CONTEND ONLY THAT THE CITY OF PARAMOUNT AND A

5   GEOGRAPHICAL AREA NORTH OF LONG BEACH HAVE BEEN

6   IDENTIFIED BY SEVERAL ADMINISTRATIVE AGENCIES, INCLUDING

7   THE LOS ANGELES DEPARTMENT OF PUBLIC HEALTH, THE SOUTH

8   COAST AIR QUALITY MANAGEMENT DISTRICT, AS AREAS AT RISK

9   FOR EXPOSURE TO HEXAVALENT CHROMIUM AND OTHER HARMFUL

10  CONTAMINANTS.

11          HOWEVER, UPON REVIEW OF THE EVIDENCE CITED,

12  THE MONITORING SIMPLY DETECTED HEXAVALENT CHROMIUM AT

13  CERTAIN MONITORING CITY SITES -- ITS MONITORING SITES,

14  WHICH WERE OFTEN NEAR THE INDUSTRIAL FACILITIES AND NONE

15  OF WHICH APPEARED AT RESIDENTIAL PROPERTIES; IN OTHER

16  WORDS, THE MONITORING DATA COVERS ONLY A SMALL PORTION

17  OF THE PROPERTY DAMAGE PROPOSED CLASS AREA.

18          PLAINTIFFS COULD HAVE, THEORETICALLY, SET

19  FORTH EXPERT OR OTHER OBJECTIVE EVIDENCE TO ESTABLISH

20  THAT THE PARAMETERS OUTLINED BY PLAINTIFFS' MAP, WHICH

21  APPEARED TO HAVE BEEN CREATED BY COUNSEL, BEAR SOME

22  REASONABLE RELATIONSHIP TO THE ALLEGED PLUME OF

23  HEXAVALENT CHROMIUM; HOWEVER, PLAINTIFFS OFFERED A

24  DECLARATION FROM A REAL ESTATE APPRAISER, DR. RANDALL

25  BELL, WHO OFFERED NO SUCH OPINION.

26          INSTEAD, DR. BELL'S OPINION AMOUNTS TO

27  NOTHING MORE THAN A DISTILLED PROPOSITION THAT

28  PROPERTIES AFFECTED BY A PLUME WOULD RESULT IN A

1    PROPERTY DEVALUATION AND THE AFFECTED AREAS WOULD

2    EXHIBIT COMMONALITIES; HOWEVER, THIS DOES NOT PROVIDE

3    THE LOGICAL NEXUS NECESSARY BETWEEN THE DISPERSION OF

4    THE HAZARDOUS MATERIALS AND THE PROPOSED CLASS

5    BOUNDARIES, OR BETWEEN THOSE TWO ISSUES THAT HAVE HAD

6    ANY ACTUAL EFFECT ON THE PROPERTY VALUES LOCATED WITHIN

7    THE CLASS BOUNDARIES.

8              AT DR. BELL'S DEPOSITION HE TESTIFIED THAT

9    HE COULD NOT PERFORM THE MASS APPRAISAL ANALYSIS THAT HE

10   PROPOSES WITHOUT THE SCIENTIFIC BASIS FOR CONTAMINATION

11   OF THE ACTUAL AREA AFFECTED, A SCIENTIFIC BASIS WHICH IS

12   SIMPLY MISSING FROM PLAINTIFFS' MOVING PAPERS.  AND,

13   SECOND, THAT DR. BELL WAS SOMEWHAT UNQUALIFIED TO

14   INTERPRET THE RAW SCIENTIFIC DATA SUBMITTED BY

15   PLAINTIFFS IN SUPPORT OF THEIR MOTION.

16             PLAINTIFFS APPARENTLY REALIZED THAT THEY

17   HAD PROVIDED NO MEANS FOR THE COURT OR DEFENDANTS TO

18   DETERMINE WHICH, IF ANY, OF THESE GEOGRAPHIC BOUNDARIES

19   BEAR ANY A RELATIONSHIP TO THE ALLEGED CONTAMINATION.

20   AND, THEREFORE, IN SUPPORT OF THEIR REPLY BRIEF,

21   PLAINTIFFS SUBMITTED A FEW HUNDRED PAGES OF ADDITIONAL

22   EVIDENCE, INCLUDING FOUR ADDITIONAL HEALTH RISK

23   ASSESSMENTS REGARDING ANAPLEX AND AEROCRAFT, AND A

24   DECLARATION OF DR. RYER-POWDER, WHO APPARENTLY REVIEWED

25   THOSE DOCUMENTS.

26             THE NEW DECLARATION, HOWEVER, IS

27   PROBLEMATIC.  IT DOES NOT ADVANCE PLAINTIFFS' POSITION

28   FOR A NUMBER OF REASONS.

1          SETTING ASIDE THE PROPRIETY OF OFFERING NEW

2    EVIDENCE ON REPLY, DR. RYER-POWDER'S DECLARATION

3    GENERALLY LACKS FOUNDATION AS TO A SUPPOSED PERSONAL

4    INVESTIGATION OR KNOWLEDGE.  AS ESSENTIALLY ADMITTED BY

5    DR. RYER-POWDER, HER DECLARATION IS PRIMARILY A DIRECT

6    RESPONSE TO THE DECLARATION OF DR. BARBARA BECK

7    SUBMITTED BY DEFENDANTS IN SUPPORT OF THEIR OPPOSITION,

8    BUT DOES NOT ESTABLISH THE REQUISITE LOGICAL NEXUS THAT

9    IS NECESSARY, AS PREVIOUSLY DISCUSSED.

10          DR. RYER-POWDER CONCLUDES THAT THERE IS

11    ADEQUATE DATA AND GOVERNMENT AGENCY REVIEW AND APPROVED

12    HEALTH RISK EVALUATIONS TO DEMONSTRATE THAT THERE IS A

13    RELATIONSHIP BETWEEN HEXAVALENT CHROMIUM IN THE AIR AND

14    THE BOUNDARIES DEFINED BY THE CLASS DUE TO EMISSIONS

15    FROM DEFENDANTS' FACILITIES AND A SIGNIFICANT CANCER

16    RISK TO PLAINTIFFS WHEN THEY'RE NEAR THE CLASS.

17          YET, THE PARAGRAPHS THAT FOLLOW THAT

18    DISCUSSION, WHICH OSTENSIBLY SUPPORT THE VERDICT OF

19    DR. RYER-POWDER, AMOUNT TO ESSENTIALLY NOTHING MORE THAN

20    SUMMARIES OF WHAT THE DOCUMENTS THAT SHE REFERRED TO

21    CONTAIN.  THOSE SUMMARIES DISCUSS THE RISK AREAS IN

22    TERMS OF TENS OF KILOMETERS IN VARIOUS DIRECTIONS FROM

23    THE ALLEGED EMISSION SOURCES.

24          THIS, IN FACT, CUTS AGAINST ESTABLISHING A

25    REASONABLE RELATIONSHIP BETWEEN THE PROPOSED CLASS

26    BOUNDARIES AND THE ALLEGED CONTAMINATION.  EVEN SETTING

27    ASIDE THAT THE CLASS BOUNDARIES APPEAR TO CAPTURE ONLY A

28    FRACTION OF THE AFFECTED PROPERTIES BASED UPON

1    DR. RYER-POWDER'S OWN SUMMARIES, NO EXPLANATION IS GIVEN

2    AS TO WHY THE POLLUTANTS WOULD SIMPLY STOP AT THE

3    PARAMOUNT CITY LIMITS OR WHY PROPERTIES MERE BLOCKS AWAY

4    FROM SOME OF THE HIGHEST CONCENTRATIONS OF THE

5    MEASURABLE EMISSIONS WOULD NOT BE INCLUDED IN THE CLASS

6    BOUNDARIES.

7            FURTHERMORE, NOTHING IS DISCUSSED ABOUT THE

8    ARBITRARY ONE-MILE RADIUS SURROUNDING LUBECO.  AND

9    DR. RYER-POWDER'S ONLY STATEMENT REGARDING LUBECO IS

10   TANTAMOUNT TO A SIMPLE OBSERVATION THAT THE DISTRICT

11   ISSUED A NOTICE OF VIOLATION TO LUBECO ON MAY 22, 2017,

12   REGARDING HEXAVALENT CHROMIUM.

13           IN OTHER WORDS, DR. RYER-POWDER DOES NOT

14   FILL IN THE EXPOSED SCIENTIFIC GAPS.  SHE HAS NOT

15   PROVIDED A PLUME MAP OR AIR DISPERSION MODEL OR

16   OTHERWISE SHOWN THAT THE GEOGRAPHIC BOUNDARIES OF THE

17   ALLEGED CONTAMINATION REASONABLY RELATE TO EACH OF THE

18   SEVEN SEPARATE DEFENDANT FACILITIES; IN FACT, SHE DOES

19   NOT SO MUCH AS EVEN OPINE THAT SUCH A MODEL WOULD BE

20   POSSIBLE.

21           IN SUM, PLAINTIFFS HAVE NOT SET FORTH ANY

22   EVIDENCE, THROUGH ANY EXPERT REPORT, DECLARATION, OR

23   OTHERWISE, THAT INDICATES A REASONABLE BASIS BEHIND THE

24   CHOSEN GEOGRAPHIC BOUNDARIES FOR THE PROPOSED CLASS.

25   INDEED, ASPECTS OF THE EXPERT TESTIMONY AND/OR

26   STATEMENTS ACTUALLY CUT AGAINST THE NOTION THAT THE

27   PROPOSED GEOGRAPHICAL BOUNDARIES RELATE TO THE ALLEGED

28   CONTAMINATION.

1          EVEN SETTING ASIDE THE AMBIGUOUS CLASS

2    DEFINITIONS, THE MAP ITSELF IS SIMPLY ATTACHED TO AN

3    ATTORNEY DECLARATION WITH NO MORE EXPLANATION EXCEPT TO

4    SAY THAT IT IS AN ILLUSTRATIVE MAP OF THE CLASS

5    BOUNDARIES FOR THE PROPOSED PROPERTY DAMAGE CLASS AND

6    ASSOCIATED SUBCLASSES.

7          ESSENTIALLY, NO ANALYSIS OR EVIDENCE IS

8    PROVIDED AS TO THE ASCERTAINABILITY OF THE MEMBERS OF

9    THE NORMAN CLASS REGARDING THE NOXIOUS ODOR ASSOCIATED

10   WITH CARLTON FORGE'S FACILITY; IN OTHER WORDS, INSTEAD

11   OF ESTABLISHING ASCERTAINABILITY BY OFFERING EXPERT OR

12   OBJECTIVE EVIDENCE SHOWING A NEXUS BETWEEN THE DRAWN

13   GEOGRAPHIC BOUNDARIES AND THE ALLEGED PLUME, PLAINTIFFS

14   RELY UPON THEIR OWN INTERPRETATION OF LIMITED

15   INFORMATION AVAILABLE TO THEM.

16         AS IN THE BROOKS CASE, THIS WILL NOT CARRY

17   THE DAY; ACCORDINGLY THE COURT CONCLUDES THAT PLAINTIFFS

18   HAVE FAILED TO ADEQUATELY DEFINE AN ASCERTAINABLE

19   PROPOSED CLASS.

20         AS TO THE SECOND FACTOR TO BE CONSIDERED ON

21   CLASS CERTIFICATION, NUMEROSITY, NO CERTAIN NUMBER IS

22   REQUIRED AS A MATTER OF LAW FOR THE MAINTENANCE OF A

23   CLASS ACTION.  TO BE CERTIFIED, A CLASS MUST BE NUMEROUS

24   IN SIZE, SUCH THAT IT IS "IMPRACTICABLE TO BRING THEM

25   ALL BEFORE THE COURT"; HOWEVER, IMPRACTICABILITY DOES

26   NOT MEAN IMPOSSIBILITY BUT ONLY A DIFFICULTY OR

27   INCONVENIENCE OF JOINING ALL MEMBERS OF THE CLASS.

28         CALIFORNIA CASE LAW INDICATES THAT EVEN AS

1    FEW AS 10 OR 28 MEMBERS CAN SATISFY THE NUMEROSITY

2    REQUIREMENT.

3              IN THE PRESENT CASE, PLAINTIFFS ASSERT THAT

4    THE SIZE OF THE CLASS AND SUBCLASS IS WELL OVER

5    1,000 HOUSING UNITS AND EVEN MORE INDIVIDUAL PERSONS

6    OCCUPYING SAID UNITS.  PLAINTIFFS STATE THAT AS OF 2010

7    THERE WERE 14,571 HOUSING UNITS WITHIN THE CITY OF

8    PARAMOUNT, OF WHICH 6,024 WERE OWNER OCCUPIED.

9              DEFENDANTS DO NOT REASONABLY DISPUTE THE

10   NUMEROSITY REQUIREMENT.

11             HERE, IF THESE THOUSANDS OF INDIVIDUALS

12   BELONG IN A CLASS AS DEFINED, THE CLASS WOULD LIKELY BE

13   SUFFICIENTLY NUMEROUS; HOWEVER, UNDER THE PRESENT

14   CIRCUMSTANCES, THE ISSUE OF NUMEROSITY SUBSTANTIALLY

15   OVERLAPS WITH THE ISSUE OF ASCERTAINABILITY.

16             GIVEN THE DEFICIENCIES ALREADY DISCUSSED,

17   IT IS UNCLEAR HOW MANY OF THE INDIVIDUAL PROPERTIES

18   BELONG IN THE CLASS; THUS, WHETHER NUMEROSITY CAN BE

19   ESTABLISHED IS FAR MORE SPECULATIVE AND QUESTIONABLE AND

20   MAY ACT AS AN IMPEDIMENT TO CERTIFICATION ALSO.

21             TURNING TO THE NEXT FACTOR TO BE CONSIDERED

22   ON A MOTION FOR CLASS CERTIFICATION, AND THAT IS

23   COMMUNITY OF INTEREST.

24             THERE ARE THREE ELEMENTS THAT EMBODY THE

25   COMMUNITY OF INTEREST REQUIREMENT:  FIRST, "PREDOMINANT

26   COMMON QUESTIONS OF LAW OR FACT"; SECONDLY, "CLASS

27   REPRESENTATIVES WITH CLAIMS OR DEFENSES TYPICAL OF THE

28   CLASS"; AND THIRD, "CLASS REPRESENTATIVES WHO CAN

1    ADEQUATELY REPRESENT THE CLASS."

2            THE CALIFORNIA SUPREME COURT HELD IN THE

3    SAV-ON CASE THAT THE CENTRAL ISSUE IN A CLASS

4    CERTIFICATION MOTION IS WHETHER THE QUESTIONS THAT WILL

5    ARISE IN THE ACTION ARE "COMMON OR INDIVIDUAL," NOT THE

6    PLAINTIFFS' LIKELIHOOD OF SUCCESS ON THE MERITS.

7            A CLASS ACTION IS NOT "PERMITTED IF EACH

8    MEMBER IS REQUIRED TO 'LITIGATE SUBSTANTIAL AND NUMEROUS

9    FACTUALLY UNIQUE QUESTIONS' BEFORE RECOVERY MAY BE

10   ALLOWED," CITING ARENAS VERSUS EL TORITO, 2010, 183,

11   CAL. APP. 4TH 423.  "IF A CLASS ACTION WILL SPLINTER

12   INTO INDIVIDUAL TRIALS, COMMON QUESTIONS DO NOT

13   PREDOMINATE AND LITIGATION OF THE ACTION IN THE CLASS

14   FORMAT IS INAPPROPRIATE."

15           IN THE PRESENT CASE, PLAINTIFFS' PRIMARY

16   APPROACH TO RECOVERY RESTS ON THE MASS TORT THEORIES

17   WITH RESPECT TO PROPERTY DAMAGE DUE TO CONTAMINATION,

18   AND NEGLIGENCE AND NUISANCE DUE TO NOXIOUS ODORS,

19   RESULTING IN PROPERTY DAMAGE, DEVALUATION AND LOSS OF

20   USE AND ENJOYMENT.

21           DEFENDANTS ARGUE THAT CALIFORNIA COURTS

22   HAVE LONG REFUSED TO CERTIFY MASS TORT PROPERTY DAMAGE

23   CASES.  THIS IS IN NO SMALL PART BECAUSE, ACCORDING TO

24   DEFENDANTS, INDIVIDUAL QUESTIONS OF LAW AND FACT WILL

25   PREDOMINATE OVER COMMON QUESTIONS.  SPECIFICALLY,

26   DEFENDANTS CONTEND THAT PLAINTIFFS HAVE COMPLETELY

27   FAILED TO SHOW HOW THE ESTABLISHMENT OF LIABILITY, AND

28   SPECIFICALLY CAUSATION, IS AMENABLE TO COMMON PROOF FOR

1    CLASS-WIDE TREATMENT GIVEN THE FOLLOWING:

2         THE VAST DIVERSITY AMONG THE THOUSANDS OF

3    POTENTIAL PROPERTIES; THE RANGE OF DEFENDANTS'

4    FACILITIES AND THE UNKNOWN INTERPLAY BETWEEN PARTICULAR

5    FACILITIES AND THE PROPERTIES; THE SEEMINGLY ENDLESS

6    AMOUNT OF EXTERNAL VARIABLES, INCLUDING TOPOGRAPHY,

7    GEOGRAPHY, STRUCTURAL IMPEDIMENTS, PLANTS, TREES AND

8    OTHER CONTAMINANT CONTRIBUTORS.

9         PLAINTIFFS, ON THE OTHER HAND, ARGUE THAT

10   PREDOMINANCE IS ROUTINELY FOUND IN MASS TORT CASES,

11   CITING TO THE SIXTH CIRCUIT'S OPINION IN STERLING VERSUS

12   VELSICOL CHEMICAL.  THAT'S SIXTH CIRCUIT 1988, 855 F.2ND

13   1188.

14        PLAINTIFFS STATE, QUOTE, IN MASS TORT

15   ACCIDENTS, THE FACTUAL AND LEGAL ISSUES OF A DEFENDANT'S

16   LIABILITY DO NOT DIFFER DRAMATICALLY FROM ONE PLAINTIFF

17   TO THE NEXT.  AND NO MATTER HOW INDIVIDUALIZED THE

18   ISSUES OF DAMAGES MAY BE, THESE ISSUES MAY BE RESERVED

19   FOR INDIVIDUAL TREATMENT WITH QUESTIONS OF LIABILITY

20   TRIED AS A CLASS ACTION, CLOSE QUOTE.

21        THE STERLING CASE CITED BY PLAINTIFFS,

22   WHICH HELD THAT A TRIAL COURT DID NOT ABUSE ITS

23   DISCRETION, FINDING THAT COMMON QUESTIONS OF LAW AND

24   FACT PREDOMINATED IN A MASS TORT CONTEXT, IS

25   INSTRUCTIVE.

26        IN REACHING ITS CONCLUSION, THE SIXTH

27   CIRCUIT PROVIDED GUIDANCE ON WHAT SORTS OF CASES MAY BE

28   BEST SUITED FOR FINDING PREDOMINANCE.

1          THE SIXTH CIRCUIT STATED, QUOTE, "IN

2     COMPLEX, MASS, TOXIC TORT ACCIDENTS, WHERE NO ONE SET OF

3     OPERATIVE FACTS ESTABLISHES LIABILITY, NO SINGLE

4     PROXIMATE CAUSE EQUALLY APPLIES TO EACH POTENTIAL CLASS

5     MEMBER AND EACH DEFENDANT, AND INDIVIDUAL ISSUES

6     OUTNUMBER COMMON ISSUES, THE TRIAL (SIC) COURT SHOULD

7     PROPERLY QUESTION THE APPROPRIATENESS OF A CLASS ACTION

8     FOR RESOLVING THE CONTROVERSY.  HOWEVER, WHERE THE

9     DEFENDANT'S LIABILITY CAN BE DETERMINED ON A CLASS-WIDE

10    BASIS BECAUSE THE CAUSE OF THE DISASTER IS A SINGLE

11    COURSE OF CONDUCT WHICH IS IDENTICAL FOR EACH OF THE

12    PLAINTIFFS, A CLASS ACTION MAY BE THE BEST SUITED

13    VEHICLE TO RESOLVE SUCH A CONTROVERSY."

14          THE PROBLEM FOR PLAINTIFFS IN THIS CASE IS

15    THAT UNLIKE THE PLAINTIFFS IN THE STERLING CASE,

16    PLAINTIFFS HAVE FAILED TO PROVIDE EVIDENCE THAT

17    LIABILITY CAN BE DETERMINED ON A CLASS-WIDE BASIS, THAT

18    IS, EVIDENCE THAT LIABILITY IS A COMMON, FACTUAL AND

19    LEGAL QUESTION.

20          PLAINTIFFS HAVE ESSENTIALLY DEMONSTRATED

21    THAT DEFENDANTS' OPERATIONS RESULT IN EXTENSIVE

22    EMISSIONS, BUT WHAT REMAINS MISSING IS ANY EVIDENCE THAT

23    THE COURSE OF THE ENTIRE CLASS OF DAMAGES COULD BE

24    DETERMINED ON A CLASS-WIDE BASIS.

25          THE COURT HAS BEFORE IT A HOST OF VARIABLES

26    WHICH BEAR ON LIABILITY AND THE PLAINTIFFS FAIL TO

27    ADEQUATELY RECONCILE HOW THESE VARIABLES ARE AMENABLE TO

28    COMMON PROOF OR DO NOT OTHERWISE RESULT IN

1    INDIVIDUALIZED QUESTIONS PREDOMINATING.  FOR EXAMPLE,

2    PLAINTIFFS FAIL TO ACCOUNT FOR THE VARIABILITY IN

3    ALLEGED SOURCES, EXTENT AND CONCENTRATIONS OF EMISSIONS

4    AT THE INDIVIDUAL PROPERTIES IN THE OSTENSIBLE

5    GEOGRAPHICAL BOUNDARIES OF THE CLASS.

6            FACTORS THAT CREATE THIS VARIABILITY

7    INCLUDE THE DISTINCT OPERATIONS AND EMISSIONS PROFILE OF

8    EACH OF THE SEVEN FACILITIES; VARIATIONS IN OPERATIONS

9    AND EMISSIONS AT EACH FACILITY OVER TIME; THE

10   ORIENTATION OF EACH FACILITY AND THE DISTANCES FROM EACH

11   PARTICULAR RESIDENCE.

12           PLAINTIFFS ALSO FAIL TO ADEQUATELY ACCOUNT

13   FOR THE DIVERSITY OF PROPERTIES IN ANALYZING THE IMPACT

14   ON THE PROPERTY VALUES.  THERE IS AN IMMENSE VARIABILITY

15   AMONG THE THOUSANDS OF PROPERTIES OWNED BY THE PUTATIVE

16   CLASS MEMBERS.  THE COURT IS LEFT TO MERE SPECULATION AS

17   TO WHETHER THE CAUSAL IMPACT IS IDENTICAL BETWEEN

18   SINGLE-FAMILY HOMES, CONDOMINIUMS, TOWNHOMES, MOBILE

19   HOMES, SMALL RENTAL UNITS, LARGE APARTMENT COMPLEXES AND

20   OWNER-OCCUPIED AND DUPLEX RENTALS.  LIKEWISE, WHILE MANY

21   OF THE RESIDENTIAL PROPERTIES IN PARAMOUNT ARE

22   OWNER-OCCUPIED SINGLE-FAMILY HOMES, MANY ARE ALSO

23   RENTED, MEANING THAT MANY ARE LIKELY TO BE INVESTMENT

24   PROPERTIES VALUED ON RENTAL INCOME STREAMS RATHER THAN

25   SALES COMPARISONS.

26           PLAINTIFFS ATTEMPT TO OVERCOME THESE ISSUES

27   BY SUBMITTING A DECLARATION FROM THEIR EXPERT DR. BELL,

28   A REAL ESTATE APPRAISER.  DR. BELL OFFERS HIS OPINION ON

1    PERFORMING A MASS APPRAISAL OF ALL PROPERTIES IN THE

2    CLASS; HOWEVER, DR. BELL'S MASS APPRAISAL OPINIONS ARE

3    OF LIMITED IMPORT.

4            FIRST, DR. BELL SUGGESTS AT HIS DEPOSITION

5    HE CANNOT PERFORM THIS MASS APPRAISAL UNLESS HE HAS THE

6    SCIENCE TO TELL HIM WHETHER A PROPERTY IS IMPACTED BY

7    CONTAMINATION FROM DEFENDANTS' FACILITIES AND PERHAPS

8    THE SCALE OF CONTAMINATION.  IT IS CLEAR THAT THE

9    ASCERTAINABILITY AND CLASS DEFINITION ISSUES DISCUSSED

10   PREVIOUSLY OVERLAP, TO A SIGNIFICANT DEGREE, WITH THE

11   PREDOMINANCE DETERMINATION HERE.

12           SECOND, DR. BELL'S OPINION DOES NOT APPEAR

13   TO REFLECT A MAGNITUDE OF PROPERTY COMPLEXITIES OR

14   REASONABLY EXPLAIN HOW THE HOST OF PROPERTY-BY-PROPERTY

15   SPECIFICS CAN BE AMENABLE TO HIS OSTENSIBLE MASS

16   APPRAISAL.  THE DIVERSITY OF PROPERTIES WOULD NO DOUBT

17   AFFECT WHETHER THE VALUATIONS WERE SUSCEPTIBLE OR

18   IMPERVIOUS TO THE IMPACT OF THE EMISSIONS.

19           THE PROPOSED CLASS AREA CONTAINS A COMPLEX

20   MIX OF PROPERTIES, INCLUDING MIXED-RESIDENTIAL AND

21   INDUSTRIAL-USE NEIGHBORHOODS AS WELL AS PURE RESIDENTIAL

22   NEIGHBORHOODS.  THE PROPERTIES ARE VARIOUSLY ADJACENT TO

23   CERTAIN AMENITIES AND IMPAIRMENTS.  THE WIDE DIVERSITY

24   OF RESIDENTIAL PROPERTIES IS CONFIRMED BY THE DEPOSITION

25   OF CERTAIN PUTATIVE CLASS MEMBERS AND THE INSPECTIONS OF

26   THEIR PROPERTIES:  THERE IS PROPERTIES NEAR REFINERY

27   EXPLOSIONS, NEAR TRAINS, NEAR FLOODING, NEAR ELECTRICAL

28   LINES.

1          OTHER INDIVIDUAL QUESTIONS WILL BEAR ON

2    CAUSATION.  FOR EXAMPLE, THE DIRECTION, STRENGTH AND

3    CONSISTENCY OF THE WIND FROM EACH OF THE SEVEN

4    FACILITIES TO EACH PROPERTY; CONTRIBUTIONS OF HEXAVALENT

5    CHROMIUM CREATED BY OTHER NEARBY INDUSTRIAL SOURCES TO

6    EACH PROPERTY; AND VARIABLE BACKGROUND CONCENTRATIONS OF

7    HEXAVALENT CHROMIUM IN THE AMBIENT AIR AT EACH PROPERTY,

8    NOT TO MENTION THE VARIOUS GEOGRAPHICAL AND

9    TOPOGRAPHICAL DELINQUENCIES UNDER AND SURROUNDING ALL

10   THE PROPERTIES AT ISSUE.

11          PLAINTIFFS' EXPERT ON REPLY,

12   DR. RYER-POWDER, OFFERS NOTHING TO ESTABLISH THAT THESE

13   CAUSATION ISSUES CAN BE DETERMINED ON A COMMON BASIS,

14   MUCH LESS THAT ANY COMMON DETERMINATIONS WOULD COUNT

15   MORE THAN THE INDIVIDUALIZED ONES.  THE COURT AGAIN IS

16   LEFT TO SPECULATE AS TO HOW, IF IT IS AT ALL POSSIBLE,

17   COULD THE HEXAVALENT CHROMIUM THAT IS ALLEGEDLY DAMAGING

18   ONE PROPERTY AND THE CLASS BOUNDARY MAY BE CAUSALLY

19   LINKED TO THE UNLAWFUL EMISSIONS OF A PARTICULAR

20   DEFENDANT, INSTEAD OF, FOR EXAMPLE, SIMPLY BEING DERIVED

21   FROM AN AGGREGATE AMOUNT OF OTHER SOURCES.

22          BY CONTRAST, IN THE STERLING CASE THE SIXTH

23   CIRCUIT DEALT WITH A SINGULAR DEFENDANT, A SOLE SOURCE

24   OF THE TOXINS EMITTED, NOT VARIOUS INDUSTRIAL SOURCES

25   NEARBY.  THUS, IN AT LEAST ONE SENSE, THE CAUSAL

26   DETERMINATION AS TO ONE CLASS MEMBER COULD BE

27   EXTRAPOLATED TO ALL.  AND A STRONG DEFENDANT'S TORT

28   LIABILITY COULD BE ADJUDICATED ON A CLASS-WIDE BASIS.

1          IN THIS CASE THERE ARE SEVEN DEFENDANTS,

2    ALL ALLEGEDLY EMITTING HEXAVALENT CHROMIUM TO VARYING

3    DEGREES IN DIFFERENT LOCATIONS AND THROUGHOUT THE CLASS

4    BOUNDARIES; HENCE, SUCH A DETERMINATION WITH RESPECT TO

5    CAUSATION CANNOT SIMILARLY BE EXTRAPOLATED.

6          I ALSO NOTE THAT PLAINTIFFS PROCEED UNDER

7    THE THEORIES OF NEGLIGENCE AND NUISANCE BASED ON THE

8    NOXIOUS ODORS.  THE COURT ASSERTS PLAINTIFFS' EXTENSIVE

9    SUBMISSION IS IN VAIN.  ANY REPORT, TEST OR OTHER PIECE

10   OF EVIDENCE THAT WOULD ALLOW IT TO CONCLUDE THAT

11   LIABILITY ON EITHER THEORY IS AMENABLE TO COMMON PROOF,

12   MUCH LESS THAT THE CLAIMS MIGHT BE ADJUDICATED ON A

13   CLASS BASIS.

14          ALL OF THIS IS TO SAY THAT ESSENTIALLY ONLY

15   TWO QUESTIONS OF FACT OR LAW LISTED BY PLAINTIFFS WILL

16   BE COMMON TO THE CLASS:  ONE, WHETHER DEFENDANTS HAVE

17   RELEASED HEXAVALENT CHROMIUM; AND, TWO, WHAT ARE THE

18   TOXICOLOGICAL EFFECTS OF HEXAVALENT CHROMIUM?

19          THESE TWO ISSUES ARE FAR OUTWEIGHED BY THE

20   INDIVIDUAL QUESTIONS BUT CONTAIN IMMENSE VARIABILITY.

21   FOR EXAMPLE, THE ALLEGED EMISSIONS PRODUCED BY

22   DEFENDANTS; THE LOCATIONS AND ORIENTATIONS OF THE

23   DEFENDANTS WITH RESPECT TO ANY CLASS MEMBER PROPERTIES;

24   THE FUNDAMENTAL DIFFERENCES AMONG THE MANY TYPES OF

25   PROPERTY; THE GEOGRAPHIC AND TOPOGRAPHICAL VARIABLES;

26   THE OBSTRUCTIONS AND IMPEDIMENTS TO THE EMISSIONS; THE

27   DIRECTION, STRENGTH AND CONSISTENCY OF THE WIND FROM

28   EACH OF THE SEVEN FACILITIES TO EACH PROPERTY;

1    CONTRIBUTIONS OF HEXAVALENT CHROMIUM CREATED BY OTHER

2    NEARBY INDUSTRIAL SOURCES TO EACH PROPERTY; AND VARIABLE

3    BACKGROUND CONCENTRATIONS OF HEXAVALENT CHROMIUM, ODORS

4    AND OTHER POLLUTANTS IN THE AMBIENT AIR AT EACH

5    PROPERTY.

6                BASED ON ALL THE FOREGOING, AND THE

7    OVERLAPPING REASONS ALREADY DISCUSSED ON THE ISSUE OF

8    ASCERTAINABILITY, THE COURT CONCLUDES THAT PLAINTIFFS

9    HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING THAT

10   COMMON QUESTIONS OF FACT AND LAW WILL PREDOMINATE OVER

11   INDIVIDUAL QUESTIONS.

12               THE NEXT FACTOR TO BE CONSIDERED ON A

13   MOTION FOR CLASS CERTIFICATION IS TYPICALITY.

14   TYPICALITY REFERS TO THE NATURE OF THE CLASS

15   REPRESENTATIVE'S CLAIM OR DEFENSE, AND IS NOT SPECIFIC

16   TO THE FACTS IN WHICH IT AROSE OR THE RELIEF SOUGHT.

17               THE TYPICALITY TEST IS "WHETHER OTHER

18   MEMBERS HAVE THE SAME OR SIMILAR INJURY, WHETHER THE

19   ACTION IS BASED ON CONDUCT WHICH IS NOT UNIQUE TO THE

20   NAMED PLAINTIFF, AND WHETHER OTHER CLASS MEMBERS HAVE

21   BEEN INJURED BY THE SAME COURSE OF CONDUCT."

22               PLAINTIFFS CONTEND IN THEIR MOTION THAT

23   ALLISON WEINER IS TYPICAL OF THE CLASS; THAT IS, LIKE

24   THE PUTATIVE CLASS MEMBERS, PLAINTIFF ALLISON WEINER

25   LIVES IN THE CITY OF PARAMOUNT AND OWNS HER PROPERTY,

26   WHICH WAS CONTAMINATED BY DEFENDANTS' CONDUCT AND

27   SIMILARLY SUFFERED INJURY FROM THE CHEMICALS AND ODORS

28   THAT TRAVERSE THE PROPERTY.

1              IN OPPOSITION, DEFENDANTS ARGUE THAT

2    PLAINTIFF ALLISON WEINER IS NOT TYPICAL OF THE CLASS FOR

3    TWO REASONS:  ONE, THE ALLEGED EXPOSURE TO HEXAVALENT

4    CHROMIUM AT HER PROPERTY DIVERGED FROM THE ALLEGED

5    EXPOSURES OF ALL OTHER PROPERTIES AS THE LEVEL OF

6    CHROMIUM DIFFERED DEPENDING ON DISTANCE, WIND DIRECTION,

7    PROPERTY TYPE AND EMISSION AMOUNTS; AND, SECONDLY,

8    UNLIKE EVERYONE OTHER THAN MEMBERS OF THE SUPPOSED

9    MOBILE HOME SUBCLASS, PLAINTIFF ALLISON WEINER DOES NOT

10   OWN REAL PROPERTY IN THE PUTATIVE CLASS AREA.  THAT IS,

11   HER MANUFACTURED HOME IS LOCATED ON A LEASED LOT IN THE

12   PARAMOUNT MOBILE VILLAGE AND IS CLASSIFIED AS PERSONAL

13   PROPERTY BY THE LOS ANGELES COUNTY ASSESSOR'S OFFICE.

14              IN REPLY, PLAINTIFFS CONCEDE THAT THEY HAVE

15   NOT SET FORTH ANY INDIVIDUAL TO SERVE AS A CLASS

16   REPRESENTATIVE IN THE TOWNHOME AND CONDOMINIUM SUBCLASS;

17   HOWEVER, PLAINTIFFS ARGUE THAT PLAINTIFF ALLISON

18   WEINER'S PROPERTY DAMAGE IS NONETHELESS TYPICAL OF THE

19   MOBILE HOME PARK SUBCLASS BECAUSE SHE OWNS HER MOBILE

20   HOME, WHICH IS LOCATED WITHIN THE CITY OF PARAMOUNT, AND

21   IT HAS BEEN NEGATIVELY AFFECTED BY DEFENDANTS' TORTIOUS

22   CONDUCT.

23              AND WHILE PLAINTIFFS DO NOT NAME OR SET

24   FORTH ARGUMENT REGARDING A CLASS REPRESENTATIVE FOR A

25   SINGLE-FAMILY HOME SUBCLASS, PLAINTIFFS NOW SEEK LEAVE

26   TO ASSIGN PLAINTIFF MOSES HUERTA AS SUCH A CLASS

27   REPRESENTATIVE.  ACCORDING TO PLAINTIFFS, THEY HAVE

28   ALREADY SUBMITTED A DECLARATION BY PLAINTIFF HUERTA

1    WITHIN THE MOVING PAPERS WHICH ADEQUATELY ESTABLISHES

2    HIS TYPICALITY AS TO THE CLASS.

3              WITH RESPECT TO ALLISON WEINER, THE CLAIM

4    OF TYPICALITY WOULD BE PROBLEMATIC FOR A NUMBER OF

5    REASONS.

6              FIRST, AS ESSENTIALLY CONCEDED BY

7    PLAINTIFFS, SHE WOULD NOT BE TYPICAL OF THE SUBCLASS

8    INVOLVING CONDOMINIUMS, TOWNHOMES OR SINGLE-FAMILY

9    RESIDENCES, GIVEN THAT SHE DOES NOT OWN ANY OF THOSE

10   TYPES OF PROPERTIES IN THE CLASS BOUNDARIES; THUS, THE

11   ISSUE IS NARROWED TO WHETHER HER CLAIMS AND INTERESTS

12   WOULD BE TYPICAL TO THE MOBILE HOME PARK SUBCLASS.  BUT

13   EVEN THAT LIMITED FINDING WOULD BE PROBLEMATICAL.

14             FIRST, AS ESSENTIALLY CONCEDED BY

15   PLAINTIFFS, AND OTHERWISE CLEARLY ESTABLISHED BY

16   PLAINTIFFS' EVIDENCE, PLAINTIFF ALLISON WEINER DOES NOT

17   ACTUALLY OWN REAL PROPERTY IN CONNECTION WITH HER MOBILE

18   HOME.  ALTHOUGH NOT ENTIRELY UNAMBIGUOUS, THE OPERATIVE

19   COMPLAINT APPEARS TO BE BASED ON INJURY TO REAL PROPERTY

20   AND REAL-PROPERTY OWNERS, NOT OWNERS WHO SUSTAIN INJURY

21   THROUGH PERSONAL PROPERTY DAMAGE.  TO ANY DEGREE THIS

22   WAS LEFT AMBIGUOUS THROUGH THE THIRD AMENDED COMPLAINT,

23   PLAINTIFFS' USE OF A REAL PROPERTY EXPERT TO SUPPORT ITS

24   CERTIFICATION MOTION OFFERED CLARITY ON THIS POINT.

25             BECAUSE PLAINTIFFS' CLAIM DID NOT REST ON

26   THE DIMINUTION OF VALUE TO PERSONAL PROPERTY, PLAINTIFF

27   ALLISON WEINER'S CLAIM TO TYPICALITY IS CALLED INTO

28   QUESTION.

1          SECONDLY, THIS ISSUE IS EVEN MORE

2    PRONOUNCED GIVEN THAT SOME OF THE PUTATIVE CLASS MEMBERS

3    OWN MOBILE PARKS BUT NOT THE MOBILE HOMES THEMSELVES.

4    THESE OWNERS WOULD BE MORE AKIN TO OWNERS OF OTHER

5    PROPERTIES WITHIN THE CLASS BOUNDARIES; FOR EXAMPLE,

6    OWNERS WHO OWN RENTAL BUILDINGS OCCUPIED BY RENTERS.

7          PLAINTIFF ALLISON WEINER'S CLAIMED INJURIES

8    WOULD NOT BE TYPICAL OF THOSE, NOR, FOR AT LEAST ONE

9    PUTATIVE CLASS MEMBER, AS IDENTIFIED BY DEFENDANTS, WHO

10    OWNS BOTH THE LAND BENEATH THE MOBILE HOME AND THE HOME

11    ITSELF, ALSO UNLIKE PLAINTIFF WEINER WHICH, AGAIN, RUNS

12    INTO A TYPICALITY PROBLEM.

13          LASTLY, SIMILAR TO THE OVERLAPPING PROBLEMS

14    EXPRESSED IN THE ASCERTAINABILITY ISSUE AND THE

15    PREDOMINANCE OF COMMON ISSUES OR INDIVIDUAL ISSUES, THE

16    MATTERS DISCUSSED REGARDING THE VARIABLES PLAY A ROLE IN

17    THE ANALYSIS OF TYPICALITY ALSO; THAT IS, THE LOCATION,

18    CHARACTERISTICS AND CONDITION OF THE HOMES IN THE

19    PUTATIVE CLASS AREA DIFFER MARKEDLY.

20          PLAINTIFFS HAVE SET FORTH NO EVIDENCE THAT

21    PLAINTIFF ALLISON WEINER'S CLAIMS OF DEVALUATION OR

22    INJURY TO HER PERSONAL PROPERTY WOULD BE TYPICAL OF

23    OTHERS BASED ON THOSE DIFFERING CONDITIONS.

24          THE COURT ALSO NOTES THAT PLAINTIFF ALLISON

25    WEINER'S SUPPORTING DECLARATION DOES NOT SO MUCH AS EVEN

26    MENTION THAT SHE EXPERIENCED A NOXIOUS ODOR AT HER

27    MOBILE HOME. THERE'S NO EVIDENCE BEFORE THE COURT THAT

28    HER CLAIMS AND INJURIES WOULD BE TYPICAL OF THOSE



```
 1    PUTATIVE CLASS MEMBERS EXPERIENCING ALLEGED NOXIOUS

 2    ·ODORS; THEREFORE, IN LIGHT OF THE FOREGOING, PLAINTIFFS

 3    DO NOT MEET THE BURDEN OF ESTABLISHING TYPICALITY WITH

 4    RESPECT TO PLAINTIFF ALLISON WEINER.

 5              TURNING TO PLAINTIFFS' ARGUMENT, ON REPLY,

 6    THAT TYPICALITY CAN BE ESTABLISHED WITH RESPECT TO

 7    PLAINTIFF HUERTA AND THE SINGLE-FAMILY RESIDENTIAL

 8    SUBCLASS, LIKE THE ANALYSIS AS TO PLAINTIFF WEINER, ANY

 9    FINDING OF TYPICALITY WOULD BE PROBLEMATIC WITH REGARD

10    TO MR. HUERTA, ALSO FOR MULTIPLE REASONS.

11              FIRST, THERE ARE SOME QUESTIONS AS TO THE

12    FOUNDATION FOR THE STATEMENTS MADE IN HIS DECLARATION.

13              WHILE IT MAY BE INFERRED FROM PLAINTIFF

14    HUERTA'S DECLARATION THAT HE OWNS THE PROPERTY LOCATED

15    AT 16629 VERMONT AVENUE DURING THE RELEVANT TIME PERIOD,

16    THE DECLARATION DOES NOT ACTUALLY SAY ANYTHING ABOUT HIS

17    OWNERSHIP.

18              HE DID SAY HE BOUGHT THE PROPERTY AT SOME

19    POINT, I GUESS, FROM HIS PARENTS.  IT DOESN'T SAY THAT

20    HE LIVES THERE OR PRESENTLY OWNS IT, ALTHOUGH HE

21    ATTACHES WHAT HE CALLS A "PROPERTY OWNERSHIP DOCUMENT"

22    WHICH IS KIND OF STRANGE BECAUSE THE PROPERTY OWNERSHIP

23    DOCUMENT DOES NOT CONSIST OF A DEED, A TRANSFER OF

24    TITLE.  WHAT IS PRESENTED IS A 2017 TAX FORM, A

25    1098 FROM CITI MORTGAGE, INDICATING, I GUESS, THE

26    DEDUCTIBILITY OF MORTGAGE INTEREST.

27              I GUESS WE'RE SUPPOSED TO ASSUME THAT

28    BECAUSE HE HAS A LOAN THAT IS SECURED BY THE PROPERTY
```

1    AND HE RECEIVED A FORM FROM THE LENDER SETTING FORTH

2    WHAT PORTION OF THE PAYMENTS WERE INTEREST FOR 2017 THAT

3    WE SHOULD ASSUME FROM THAT THAT HE IS AN OWNER OF THE

4    SUBJECT PROPERTY.

5              PLAINTIFF ALSO OFFERS NO FOUNDATION OR

6    INFORMATION REGARDING THE DOCUMENT, HIS PERSONAL

7    KNOWLEDGE OF THE DOCUMENT OR WHO PREPARED IT.  AND

8    ALTHOUGH IT'S INTERESTING THAT HE HAS A MORTGAGE ON A

9    PROPERTY, THERE'S NO EVIDENCE DIRECTLY THAT HE ACTUALLY

10   OWNS THE PROPERTY.  BUT ASSUMING THAT HE DOES, THE

11   TYPICALITY WITH RESPECT TO PLAINTIFF HUERTA'S OWNERSHIP

12   SUFFERS FROM MANY OF THE SAME PROBLEMS DISCUSSED WITH

13   RESPECT TO PLAINTIFF ALLISON WEINER.

14             FOR EXAMPLE, LOCATION, CHARACTERISTICS AND

15   CONDITION OF THE HOMES IN THE PUTATIVE CLASS AREA DIFFER

16   MARKEDLY.  PLAINTIFF HUERTA'S DECLARATION OFFERS SOME

17   CONCLUSORY STATEMENTS BUT OFFERS NO EVIDENCE THAT HIS

18   CLAIMS OF DEVALUATION OR INJURY TO HIS OSTENSIBLE

19   SINGLE-FAMILY HOME WOULD BE TYPICAL OF OTHERS BASED UPON

20   DIFFERING CONDITIONS.  AND LIKE ALLISON WEINER'S

21   DECLARATION, PLAINTIFF HUERTA'S DECLARATION DOES NOT

22   MENTION ANY NOXIOUS ODORS.  THERE IS NO EVIDENCE BEFORE

23   THE COURT THAT HIS CLAIMS OF INJURY WOULD BE TYPICAL OF

24   THOSE PUTATIVE MEMBERS EXPERIENCING SUCH ORDERS.

25             IN LIGHT OF ALL THE FOREGOING, THE COURT

26   FINDS THAT PLAINTIFFS HAVE NOT MET THEIR BURDEN TO

27   ESTABLISH TYPICALITY WITH RESPECT TO PLAINTIFF HUERTA OR

28   WEINER.

1          THE NEXT FACTOR TO BE CONSIDERED BY THE

2    COURT WITH REGARD TO CERTIFICATION IS ADEQUACY.  AND

3    THAT IS THE ADEQUACY OF PLAINTIFF AND COUNSEL TO

4    REPRESENT THE CLASS.

5          THE NAMED PLAINTIFF MUST BE ADEQUATE TO

6    REPRESENT ALL THE INDIVIDUAL MEMBERS OF THE CLASS, AND

7    IT DEPENDS ON WHETHER THE PLAINTIFFS' ATTORNEYS IS

8    QUALIFIED TO CONDUCT THE PROPOSED LITIGATION AND

9    PLAINTIFFS' INTERESTS ARE NOT ANTAGONISTIC TO THE

10   INTERESTS OF THE CLASS.

11         THE PRIMARY CRITERIA FOR DETERMINING

12   WHETHER A CLASS REPRESENTATIVE WILL ADEQUATELY REPRESENT

13   THE CLASS IS WHETHER THE REPRESENTATIVE, THROUGH

14   QUALIFIED COUNSEL, WILL "VIGOROUSLY AND TENACIOUSLY,"

15   PROTECT THE INTERESTS OF THE CLASS.

16         IN THE PRESENT CASE, PLAINTIFFS' COUNSEL

17   HAS SUBMITTED A DECLARATION ESTABLISHING COUNSEL IS

18   EXPERIENCED AND WELL-QUALIFIED TO LEAD THIS PROPOSED

19   CLASS ACTION PROCEEDING.  AND THERE'S NO CONTRARY

20   EVIDENCE TO THAT PROPOSITION.

21         THE PLAINTIFFS THEMSELVES SEEM TO HAVE A

22   CLEAR UNDERSTANDING OF THE FACTS OF THE CASE AND ARE

23   WILLING TO PARTICIPATE IN IT.  AND PLAINTIFFS HAVE

24   REPRESENTED THAT THERE IS NO CONFLICT AND THEY APPEAR TO

25   BE WILLING TO PURSUE THE ACTION ON BEHALF OF THE

26   PROPOSED CLASS.

27         WERE THE ANALYSIS TO END THERE,

28   THE ADEQUACY MIGHT BE ESTABLISHED; HOWEVER, AS THE

1    UNITED STATES SUPREME COURT HAS NOTED,

2    "THE ADEQUACY-OF-REPRESENTATION REQUIREMENT 'TENDS TO

3    MERGE' WITH THE COMMONALITY AND TYPICALITY

4    REQUIREMENT (SIC) WHICH "SERVE AS GUIDEPOSTS FOR

5    DETERMINING WHETHER...MAINTENANCE OF THE CLASS ACTION IS

6    ECONOMICAL AND WHETHER THE NAMED PLAINTIFF'S CLAIMS AND

7    THE CLASS CLAIMS ARE SO INTERRELATED THAT THE INTERESTS

8    OF THE CLASS MEMBERS WILL BE FAIRLY AND ADEQUATELY

9    PROTECTED IN THEIR ABSENCE," CITING AMCHEM PRODUCTS

10   VERSUS WINDSOR, 1997, 521 U.S. 591.

11            IN THIS CASE, PLAINTIFFS HAVE FAILED TO

12   ESTABLISH THAT THE INTERESTS OF THOSE WITHIN THE SINGLE

13   CLASS OF REAL-PROPERTY OWNERS ARE ALIGNED WITH THOSE OF

14   PLAINTIFF WEINER, AN OSTENSIBLE NON-REAL-PROPERTY OWNER,

15   OWNER OF A MOBILE HOME.  AND PLAINTIFFS OFFER NOTHING TO

16   RECONCILE DISPARITY AMONG THE TYPES OF PROPERTY OWNERS

17   AT ISSUE, THEIR INTERESTS AND THE INTERESTS OF THE

18   PROPOSED CLASS REPRESENTATIVES.  THE PLAINTIFFS HAVE

19   OFFERED NO ANALYSIS OR ARGUMENT WITH RESPECT TO

20   PLAINTIFF HUERTA'S ADEQUACY, MUCH LESS AS TO WHETHER HIS

21   INTERESTS ARE CO-EXTENSIVE WITH THE CLASS.

22            MOREOVER, TO THE EXTENT THE PLAINTIFFS SEEK

23   EITHER OF THESE TWO INDIVIDUALS AS POSSIBLE

24   REPRESENTATIVES TO REPRESENT THE NORMAN CLASS, ADEQUACY

25   HAS ALSO NOT BEEN MET FOR THAT CLASS.  NEITHER

26   DECLARATION FROM NORMAN (SIC) OR HUERTA OFFER ANY

27   EVIDENCE THAT THEY'RE QUALIFIED TO CONDUCT THE PROPOSED

28   LITIGATION AND THEIR PROPOSED INTERESTS ARE NOT

1    ANTAGONISTIC TO THE INTERESTS OF THE NORMAN CLASS.

2              THE DECLARATIONS DO NOT PERSUADE THE COURT

3    THAT THEY WILL VIGOROUSLY AND TENACIOUSLY PROTECT THE

4    INTERESTS OF THE CLASS WITH RESPECT TO THE NORMAN CLASS

5    CLAIMS.  AS ALREADY MENTIONED, THE DECLARATIONS DO NOT

6    MENTION THAT THESE PLAINTIFFS EXPERIENCED ANY OF THE

7    INJURIES ASSOCIATED WITH NOXIOUS ODORS, MUCH LESS

8    STATING THAT THEY UNDERSTAND AND ARE WILLING TO

9    PROSECUTE THE NOXIOUS ODOR CLAIMS.

10             BASED UPON ALL OF THE FOREGOING, THE COURT

11   CANNOT FIND THAT PLAINTIFF ALLISON WEINER OR PLAINTIFF

12   HUERTA WOULD ADEQUATELY AND FAIRLY REPRESENT THE ABSENT

13   CLASS MEMBERS.

14             "TRIAL COURTS ARE REQUIRED TO CAREFULLY

15   WEIGH RESPECTIVE BENEFITS AND BURDENS AND TO ALLOW

16   MAINTENANCE OF THE CLASS ACTION ONLY WHERE SUBSTANTIAL

17   BENEFITS ACCRUE BOTH TO THE LITIGANTS AND THE COURTS,"

18   CITING LINDER VERSUS THRIFTY OIL, 2000, 23 CAL. 4TH 429.

19             COURTS MUST PAY CAREFUL ATTENTION TO

20   MANAGEABILITY CONCERNS WHEN DECIDING WHETHER TO CERTIFY

21   A CLASS ACTION.  IN A COURT'S CONSIDERATION OF WHETHER A

22   CLASS ACTION IS SUPERIOR FOR RESOLVING A CONTROVERSY,

23   THE MANAGEABILITY OF INDIVIDUAL ISSUES IS JUST AS

24   IMPORTANT AS THE EXISTENCE OF COMMON QUESTIONS UNITING

25   THE PROPOSED CLASS.

26             TRIAL COURTS EVALUATE WHETHER A CLASS

27   ACTION IS A SUPERIOR MEANS FOR RESOLVING LITIGATION BY

28   CONSIDERING VARYING AND MANY FACTORS, INCLUDING, BUT NOT

1    LIMITED TO, WHETHER THE ALLEGED CLAIMS, BEING SMALL,

2    WOULD NOT BE PURSUED EXCEPT BY WAY OF A CLASS ACTION;

3    WHETHER MULTIPLE LAWSUITS ARE LIKELY IF THE CLASS ACTION

4    IS NOT CERTIFIED; WHETHER INDIVIDUAL RIGHTS CAN BE

5    ADEQUATELY PROTECTED IF THE ACTION PROCEEDS AS A CLASS

6    ACTION; AND WHETHER CLASS TREATMENT IS MORE EFFICIENT

7    AND ECONOMICAL THAN ADJUDICATING THE POTENTIAL NUMBER OF

8    INDIVIDUAL CASES.

9              IN THIS CASE, IN THIS MOTION FOR CLASS

10   CERTIFICATION, NOTHING REMOTELY SUGGESTS THAT THE CLASS

11   ACTION MECHANISM IS SUBSTANTIALLY MORE EFFICIENT THAN

12   JOINDER OF ALL THE INDIVIDUAL CLAIMANT PARTIES.  AS

13   MENTIONED, INDIVIDUALIZED QUESTIONS OF FACT OR LAW

14   EXCEED THOSE WHICH ARE COMMON TO THE CLASS.

15             A SEPARATE INQUIRY, NECESSARY FOR EACH

16   PROPERTY, EACH PLAINTIFF, AND EACH DEFENDANT, WOULD UNDO

17   WHATEVER EFFICIENCIES SUCH CLASS PROCEEDING WOULD HAVE

18   BEEN INTENDED TO PROMOTE.  MOREOVER, MASSIVE PROBLEMS

19   EXIST AS TO THE ASCERTAINABILITY OF THE CLASS.  YET, TO

20   THE EXTENT THAT THE CLASS COULD BE ASCERTAINED, ALL OF

21   THE CLASS MEMBERS ARE CONVENIENTLY LOCATED IN THE

22   GREATER PARAMOUNT AREA, BASED UPON THE MAP THAT WAS

23   PROVIDED BY THE ATTORNEYS.  ADMITTEDLY, MULTIPLE

24   LAWSUITS WOULD LIKELY PRECEDE; HOWEVER, PLAINTIFFS' OWN

25   EVIDENCE ESTABLISHES THAT THE PROPERTY DEVALUATIONS ARE

26   SIGNIFICANT, MAKING IT LESS LIKELY THAT THERE WOULD BE

27   ECONOMIC BARRIERS TO BRINGING LITIGATION ON AN

28   INDIVIDUAL BASIS.

1          IN OTHER WORDS, THE POTENTIAL INDIVIDUAL

2     RECOVERIES OF THE PUTATIVE CLASS MEMBERS WOULD NOT BE SO

3     SMALL OR INSIGNIFICANT SO AS TO PRECLUDE INDIVIDUAL

4     LITIGATION.  THIS WOULD ALSO STAND TO FURTHER PROTECT

5     INDIVIDUAL RIGHTS, ESPECIALLY IN LIGHT OF THE INADEQUACY

6     OF THE CLASS REPRESENTATIVES AND PLAINTIFFS' GENERAL

7     INABILITY TO FIND REPRESENTATIVES.  AS IT STANDS, ALMOST

8     NO FACTOR WEIGHS IN FAVOR OF THIS CASE BEING BROUGHT AS

9     A CLASS ACTION; AND, THEREFORE, THE COURT IS GOING TO

10    DENY THE MOTION FOR CLASS CERTIFICATION.

11         AS A SIDE NOTE, THE COURT IS ALSO GOING TO

12    DENY DEFENDANTS' MOTION TO EXCLUDE THE DECLARATION OF

13    DR. RANDALL BELL.  ALTHOUGH THERE ARE MANY PARTS OF THE

14    DECLARATION THAT ARE QUESTIONABLE AS FAR AS ANSWERING

15    THE QUESTIONS WHICH MUST BE CONSIDERED ON A MOTION FOR

16    CLASS CERTIFICATION; NEVERTHELESS, THE OBJECTIONS REALLY

17    GO TO THE WEIGHT OF THE DECLARATION, NOT TO ITS

18    ADMISSIBILITY.  SO THE MOTION TO EXCLUDE THE DECLARATION

19    IS DENIED.

20         AND I'LL ORDER DEFENDANTS TO PREPARE AN

21    APPROPRIATE ORDER AND GIVE NOTICE TO PLAINTIFF AND POST

22    IT ON THE WEBSITE.

23         I THANK COUNSEL FOR THE EXTENSIVE AND

24    EXCELLENT BRIEFING ON THE ISSUE.

25         THERE'S ONE OTHER MATTER THAT I THINK WE

26    SHOULD ADDRESS, AND THAT IS THERE WAS A STATUS

27    CONFERENCE SET FOR THE CALZADA CASE, WHICH HAS BEEN

28    RELATED TO THE WEINER CASE AND THE OTHER CASES.

1              I DO SEE, BASED UPON THE JOINT STATUS

2     CONFERENCE REPORT, THAT A STIPULATION HAS BEEN ENTERED

3     INTO AND THE COURT HAS SIGNED THE ORDER APPROVING THE

4     STIPULATION TO COORDINATE DISCOVERY SO THAT THE ACTIONS

5     PROCEED ON A SIMILAR SCHEDULE, AND THAT DEFENDANTS HAVE

6     PROVIDED THE CALZADA PLAINTIFFS WITH THE SAME SHORT-FORM

7     QUESTIONNAIRES AND DISCOVERY IS PROCEEDING.

8              ANYTHING ANYONE WOULD SPECIFICALLY LIKE TO

9     ADDRESS ON THAT CASE?

10              ANY OTHER ISSUES ANYONE WISHES TO ADDRESS

11    TODAY?

12              ALL RIGHT.  WE'LL SET ANOTHER STATUS

13    CONFERENCE --

14        THE CLERK:  YOUR HONOR, I APOLOGIZE TO INTERRUPT.

15              ON THE WEINER MATTER, WE HAD THE OSC RE

16    DISMISSAL OF SOME PLAINTIFFS.  I BELIEVE IT WAS THE SOSA

17    PLAINTIFFS.

18        THE COURT:  I'M SORRY?

19        THE CLERK:  I THOUGHT WE HAD AN ORDER TO SHOW

20    CAUSE ON THE WEINER CASE REGARDING THE DISMISSAL OF

21    INDIVIDUAL PLAINTIFFS THAT HAVE NOT FILLED OUT THE

22    QUESTIONNAIRE.

23        THE COURT:  ALL RIGHT.  ANY COUNSEL WISH TO UPDATE

24    THE COURT?

25              THE CLERK REMINDS ME --

26        MR. WEBB:  YOUR HONOR --

27        THE COURT:  -- THERE THAT WAS AN OSC WITH REGARDS

28    TO PLAINTIFFS WHO HAVE NOT COMPLETED, I TAKE IT, THE

1    PLAINTIFF FACT SHEETS.

2              ANY INPUT ON THAT?

3         MR. WEBB:  YOUR HONOR --

4         MR. KELLY:  YES, YOUR HONOR.  THIS IS MICHAEL

5    KELLY FOR THE PLAINTIFFS.

6              WE HAVE NOT RECEIVED THE FACT SHEETS TO

7    DATE FROM JULIAN SOSA, JR., OR JULIAN SOSA, III.

8         MR. JOSEPH FINNERTY:  YES, YOUR HONOR.  THIS IS

9    JOSEPH FINNERTY.

10             I BELIEVE THE ORDER TO SHOW CAUSE WAS FOR

11   JULIAN SOSA, JR., AND JULIAN SOSA, III

12        THE COURT:  YES.  NOW I REMEMBER.  YES.

13             SO YOU'VE NOT RECEIVED THE FACT SHEETS FROM

14   THEM; THEY'RE NO LONGER INTERESTED IN PURSUING THE

15   MATTER.

16             AND THEY'VE BEEN GIVEN NOTICE WITH REGARD

17   TO THE FACT SHEETS, HAVE THEY NOT?

18        MR. KELLY:  THEY HAVE, YOUR HONOR.

19        MR. JOSEPH FINNERTY:  THEY HAVE BEEN GIVEN NOTICE

20   OF THE FACT SHEETS, YOUR HONOR, AND THEY HAVE NOT

21   SUBMITTED THEM, YES.

22        THE COURT:  ALL RIGHT.  AND BASED UPON THE FAILURE

23   TO PROVIDE THE FACT SHEETS, THEN WE SET AN OSC RE

24   DISMISSAL.

25             THE PLAINTIFFS HAVE HAD NOTICE OF THE OSC

26   RE DISMISSAL, THAT IF THEY DON'T PROVIDE THE FACT

27   SHEETS, THE CLAIMS OF THOSE PLAINTIFFS WILL BE

28   DISMISSED; SO ANYTHING TO SAY IN RESPONSE TO THE COURT'S

1    PROPOSED ACTION OF DISMISSING THOSE CLAIMS?

2        MR. KELLY:  NO, YOUR HONOR.

3        THE COURT:  ALL RIGHT.  THEN THE COURT WILL

4    DISMISS THOSE PLAINTIFFS' CLAIMS.

5            ANYTHING ELSE ANYONE WISHES TO ADDRESS

6    TODAY?

7            ALL RIGHT.  WE'LL SET ANOTHER STATUS

8    CONFERENCE ABOUT 60 DAYS OUT.

9            WE'LL SET THE NEXT STATUS CONFERENCE FOR

10   MARCH 14TH AT 9:00 A.M.  AND I'LL ORDER THE PARTIES TO

11   MEET AND CONFER AND SUBMIT A JOINT REPORT NO LATER THAN

12   MARCH 7TH AS TO THE STATUS OF THE DISCOVERY AND A

13   PROPOSED DATE FOR SETTING THE CASE FOR TRIAL.

14           AND I'D ALSO ORDER THE PARTIES TO MEET AND

15   CONFER WITH REGARD TO THE PREPARATION OF A PROPOSED

16   TRIAL MANAGEMENT ORDER.  AND THAT IS GIVEN NUMEROUS

17   PARTIES PARTICIPATING, THAT THE PARTIES SHOULD DISCUSS A

18   PROCESS OF HOW THEY ENVISION THE CASE BEING TRIED.

19       THE CLERK:  YOUR HONOR, I BELIEVE THIS MATTER IS

20   ALREADY SET FOR TRIAL FEBRUARY 25TH.

21           NO?

22           I APOLOGIZE.

23       THE COURT:  I THINK IT WAS THE INTENTION TO VACATE

24   THAT DATE.

25           DIDN'T WE DISCUSS THAT LAST TIME?

26       MR. KELLY:  YES, YOUR HONOR.

27       MR. ROMEY:  YES, YOUR HONOR.

28           I THINK THAT'S THE ANAPLEX SEPARATE MATTER

1    THAT WAS GOING TO GO TO TRIAL.

2         THE COURT:  RIGHT.  OKAY.

3              THE COURT IS GOING TO VACATE THAT DATE IN

4    THE WEINER CASE.

5              AND SO THAT THE PARTIES SHOULD ADDRESS THE

6    TRIAL MANAGEABILITY ISSUES IN THEIR REPORT AND WE'LL

7    DISCUSS THAT AT THE NEXT CONFERENCE ON MARCH 14TH.

8              I'D ASK DEFENDANT TO GIVE NOTICE AND POST

9    IT ON THE WEBSITE.

10             AND THANK YOU, COUNSEL.

11        MR. FRAZIER:  YOUR HONOR, IF I MAY?

12             MARK FRAZIER FOR WEBER METALS.

13        THE COURT:  YES.

14        MR. FRAZIER:  THERE WAS A NEW LAWSUIT FILED, I

15   BELIEVE IN OCTOBER, LEAD PLAINTIFF NAMED CRAIG, BY

16   PLAINTIFFS' COUNSEL.

17        THE COURT:  CRAIG, C-R-A-I-G?

18        MR. FRAZIER:  CORRECT, C-R-A-I-G.

19        THE COURT:  DO YOU HAVE THE CASE NUMBER?

20        MR. FRAZIER:  I DO NOT IN FRONT OF ME.

21             IT WAS FILED WITH THE NOTICE OF RELATED

22   CASES.  TO MY KNOWLEDGE, THERE HAVE BEEN NO RESPONSES

23   YET IN THAT CASE BUT IT APPEARS TO BE PRETTY MUCH THE

24   SAME AS THE WEINER IN TERMS OF ITS ALLEGATIONS.

25        THE COURT:  DO YOU KNOW WHICH DEPARTMENT TO WHICH

26   IT WAS ASSIGNED?

27        MR. FRAZIER:  PLAINTIFFS' COUNSEL MAY KNOW.

28        MR. KELLY:  OFF THE TOP OF MY HEAD, I DON'T.  I

1    THINK IT'S BOUNCED AROUND A COUPLE OF TIMES.  BUT WE DID

2    FILE A NOTICE OF RELATED CASE TO TRY TO GET IT HERE.

3         THE COURT:  DO YOU HAVE A COPY OF THE NOTICE OF

4    RELATED CASE HERE?

5         MR. KELLY:  NOT WITH ME, BUT WE CAN CERTAINLY

6    PROVIDE THAT.

7         THE COURT:  DID YOU FILE THAT IN THIS DEPARTMENT?

8         MR. KELLY:  WE DID NOT, NO.  WE FILED IT AT

9    STANLEY MOSK WITH A NOTICE OF RELATED CASE TO BE SENT TO

10   THIS DEPARTMENT.  BUT WE CAN CERTAINLY PROVIDE THAT FOR

11   THE COURT ON CASEANYWHERE OR HOWEVER YOU'D LIKE.

12        THE COURT:  OKAY.  ANY OBJECTION TO RELATING THAT

13   CASE TO THE WEINER CASE AND THE OTHER CASES BEFORE THIS

14   COURT?

15        MR. FRAZIER:  NO OBJECTION.

16        MR. ROMEY:  NO OBJECTION.

17        THE COURT:  ALL RIGHT.

18             AND, COUNSEL, YOU REPRESENT THE PLAINTIFF

19   IN THAT CASE?

20        MR. KELLY:  THAT'S CORRECT.

21        THE COURT:  WITHOUT OBJECTION, THE COURT WILL

22   ORDER THE CRAIG CASE RELATED TO THE OTHER CASES HERE AND

23   ORDER TRANSFER TO THIS DEPARTMENT.

24             AND I'D ASK COUNSEL, AFTER THE HEARING, TO

25   SEE IF YOU CAN LOCATE THE CASE NUMBER TO ADVISE THE

26   CLERK OF THE COURT.

27             ALL RIGHT.  THANK YOU, COUNSEL, AND HAVE A

28   GOOD DAY, A GOOD WEEK.

1        MR. ROMEY:  THANK YOU, YOUR HONOR.

2        MR. WEBB:  YOUR HONOR, ON THE CALZADA CASE?

3        THE COURT:  YES.

4              YES, COUNSEL?

5        MR. WEBB:  YOUR HONOR, ON THE CALZADA CASE, I HIT

6   THE HANG-UP BUTTON INSTEAD OF THE MUTE BUTTON, I

7   APOLOGIZE.

8              THIS IS ATTORNEY LENDEN WEBB FOR THE

9   PLAINTIFFS.

10       THE COURT:  YES.

11             DID YOU WANT TO SAY SOMETHING?

12       MR. WEBB:  WHEN YOU -- AFTER YOUR --

13             WHEN YOU CALLED THE CALZADA CASE, I HIT THE

14  MUTE -- THE MUTE INSTEAD OF THE HANG-UP OR VICE VERSA.

15       THE COURT:  ALL RIGHT.  THANK YOU FOR YOUR

16  APPEARANCE.

17  /

18  /

19

20

21

22

23

24

25

26

27

28

46

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                   FOR THE COUNTY OF LOS ANGELES

3

4    DEPARTMENT 6                    HON. ELIHU M. BERLE, JUDGE

5    ALLISON WEINER, ET AL.,   )    NO. BC652102
                               )    (CONSOLIDATED WITH
6            PLAINTIFFS,       )    NO. BC677134)
                               )
7      VS.                     )    RELATED CASES: BC644520,
                               )    BC650094, BC651484
8    AEROCRAFT HEAT TREATING   )
     COMPANY, INC., ET AL.,    )
9                              )
                DEFENDANTS.    )    REPORTER'S
10   _____)   CERTIFICATE

11

12

13              I, LAURIE HELD-BIEHL, STIPULATED REPORTER

14   PRO TEMPORE OF THE SUPERIOR COURT OF THE STATE OF

15   CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY

16   CERTIFY THAT I DID CORRECTLY REPORT THE PROCEEDINGS

17   CONTAINED HEREIN AND THAT THE FOREGOING PAGES 1 THROUGH

18   46, INCLUSIVE, COMPRISE A FULL, TRUE, AND CORRECT

19   TRANSCRIPT OF THE PROCEEDINGS AND TESTIMONY TAKEN IN THE

20   MATTER OF THE ABOVE-ENTITLED CAUSE ON MONDAY,

21   JANUARY 14, 2019.

22

23              DATED THIS 21ST DAY OF JANUARY, 2019.

24

25

26

27
                        LAURIE HELD-BIEHL, CSR NO. 6781
28
```

02/08/2016

**EXHIBIT B**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 6

BC652102                                                    January 14, 2019
**ALLISON WEINER ET AL VS AEROCRAFT HEAT**                     10:00 AM
**TREATING COMPANY INC**

Judge: Honorable Elihu M. Berle          CSR: Laurie Held-Biehl CSR# 6781, Reporter
                                         Pro Tem
Judicial Assistant: M. Fregoso           ERM: None
Courtroom Assistant: M. Molinar          Deputy Sheriff: None

---

APPEARANCES:

For Plaintiff(s): LEXINGTON LAW GROUP (Telephonic) By Lucas C. Williams; Mike M.

Arias, Esq. By Arnold C Wang; Thomas V. Girardi, Esq. By Michel P. Kelly

For Defendant(s): Rutan & Tucker, Law Offices of By Lucas K. Hori; Kutak Rock LLP By Jad

T. Davis; Clark Hill LLP By Christopher G. Foster -- See additional appearances below.

Other Appearance Notes: Defendant, Rutan & tucker, LLP, By Mark B. FrazierDefendant, Kutak

Rock LLP, By John Mark JenningsPlaintiff, Girardi | Keese, By Robert W. FinnertyPlaintiff,

Girardi | Keese, By Joseph R. Finnerty

---

**NATURE OF PROCEEDINGS:** Hearing on Motion for Class Certification; Order to Show Cause Re: Dismissal of certain Plaintiffs; Hearing on Motion - Other To Exclude Declaration of Dr. Randall Bell

Matters are called for hearing.

Pursuant to Government Code sections 68086, 70044, California Rules of Court, rule 2.956, and the stipulation of appearing parties, Laure Held Biehl, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Motion for Class Certification and Motion to exclude are heard, argued and:

The Motion to Exclude Declaration of Dr. Randall Bell filed by PRESS FORGE COMPANY , CARLTON FORGE WORKS, INC. , Aerocraft Heat Treating Company, Inc on 11/19/2018 is Denied.

The Motion for Class Certification is denied

The Order to Show Cause re: dismissal is heard, and no party showing good cause: the claims of plaintiffs Julian Sosa III and Julian Sosa Jr. are dismissed this date without prejudice.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 6

BC652102                                                          January 14, 2019
**ALLISON WEINER ET AL VS AEROCRAFT HEAT**                        10:00 AM
**TREATING COMPANY INC**


Judge: Honorable Elihu M. Berle            CSR: Laurie Held-Biehl CSR# 6781, Reporter
                                           Pro Tem
Judicial Assistant: M. Fregoso            ERM: None
Courtroom Assistant: M. Molinar           Deputy Sheriff: None

---

Status Conference is scheduled for 03/14/19 at 09:00 AM in Department 6 at Spring Street Courthouse.

The parties are directed to meet and confer and file a Joint Report re: status of discovery, proposed date for trial, and trial management order by March 7, 2019.

On the Court's own motion, the Final Status Conference scheduled for 01/28/2019, and Non-Jury Trial scheduled for 02/25/2019 are advanced to this date and vacated .


The court finds that the following cases, BC652102 and 18STCV03833, are related within the meaning of CRC 3.300(a). BC652102 is the lead case. For good cause shown, said cases are assigned to Judge Elihu M. Berle in Department 6 at Spring Street Courthouse.

All hearings in cases other than the lead case are advanced and taken off calendar. Counsel for the defendant is ordered to serve notice of this order

Counsel for the defendant is to give notice and post on the website.

Additional appearances for Defendant(s):
CASTELLON & FUNDERBURK, LLP By Alastair F. Hamblin
Michael George Romey

---

**PROOF OF SERVICE**

I am employed in the County of San Diego, State of California. I am over the age of 18 years. My business address is Latham & Watkins LLP, 12670 High Bluff Drive, San Diego, California 92130. My email address is: stacy.silver@lw.com.

On **January 29, 2019**, I served the following document described as:

[PROPOSED ORDER] RE:

    (1) PLAINTIFFS' MOTION FOR CLASS CERTIFICATION;

    (2) PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;

    (3) CERTAIN DEFENDANTS' MOTION TO EXCLUDE DECLARATION OF DR. RANDALL BELL;

    (4) DEFENDANT MATTCO FORGE, INC.'S EVIDENTIARY OBJECTIONS TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

    (5) CERTAIN DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; and

    (6) PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM FILED IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

by serving a true copy of the above-described document in the following manner:

**BY ELECTRONIC MAIL (VIA CASE ANYWHERE)**

By electronic mail transmission from stacy.silver@lw.com on January 29, 2019, by transmitting a PDF format copy of such document(s) at the email address listed by their addresses. The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

**SEE ATTACHED SERVICE LIST**

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **January 29, 2019**, at San Diego, California.

_____
Stacy J. Silver

# Electronic Service List

Case:                    **Weiner, et al. v. Aerocraft Heat Treating Company, et al.**

Case Info:               **BC652102 and Related Cases (BC644520, BC650094, BC651485, TC028875, BC677134), Los Angeles Superior Court**

**Arias Sanguinetti Wang & Torrijos LLP**
Mike Arias, Esq. (mike@asstlawyers.com)
Arnold Wang, Esq. (arnold@asstlawyers.com)
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
Phone: (310) 844-9696
Fax: (310) 861-0168

*Representing:* Eglossiree Norman, an individual, on behalf of herself, the general public and those similarly situated

**Best Best & Krieger LLP**
Gene Tanaka, Esq. (gene.tanaka@bbklaw.com)
3390 University Ave., 5th Floor
Riverside, CA 92502
Phone: (951) 686-1450
Fax: (951) 686-3083

*Representing:* People of the State of California ex rel. County of Los Angeles

**Best Best & Krieger LLP**
Ryan Guiboa, Esq. (ryan.guiboa@bbklaw.com)
John Holloway, Esq. (john.holloway@bbklaw.com)
Wendy Wang, Esq. (wendy.wang@bbklaw.com)
300 S. Grand Avenue, Suite 2500
Los Angeles, CA 90071
Phone: (213) 617-8100
Fax: (213) 617-7480

*Representing:* People of the State of California ex rel. County of Los Angeles

**Castellon & Funderburk LLP**
Ruben Castellon, Esq. (rcastellon@candffirm.com)
William Funderburk, Jr., Esq. (wfunderburk@candffirm.com)
Alastair Hamblin, Esq. (ahamblin@candffirm.com)
811 Wilshire Boulevard, Suite 1025
Los Angeles, CA 90071
Phone: (213) 623-7515

*Representing:* Anaplex Corporation

**Clark Hill LLP**
Christopher Foster, Esq. (cfoster@clarkhill.com)
1055 West Seventh Street, 24th Floor
Los Angeles, CA 90017
Phone: (213) 891-9100
Fax: (213) 488-1178

*Representing:* Lubeco, Inc.

**Girardi & Keese**
Joe Finnerty, Esq. (jfinnerty@girardikeese.com)
Robert Finnerty, Esq. (rfinnerty@girardikeese.com)
Michael Kelly, Esq. (mkelly@girardikeese.com)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Phone: (213) 977-0211
Fax: (213) 481-1554

*Representing:* Allison Weiner
Damon Honaker
David Redd
Lori Guillen
Penelope Redd, a minor by and through her guardian ad litem, Allison Weiner
Susan Weiner, individually and on behalf of all others similarly situated

**Huang Ybarra Gelberg & May LLP**
Kevin Scott, Esq. (kevin.scott@hysmlaw.com)
Joseph Ybarra, Esq. (joseph.ybarra@hysmlaw.com)
550 S. Hope Street, Suite 1850
Los Angeles, CA 90071
Phone: (213) 884-4900

*Representing:* People of the State of California ex rel. South Coast Air Quality Management District

**KJT Law Group, LLP**
Caspar Jivalagian, Esq. (caspar@kjtlawgroup.com)
Vache Thomassian, Esq. (vache@kjtlawgroup.com)
230 N. Maryland Avenue, Suite 306
Glendale, CA 91206
Phone: (818) 507-8525
Fax: (818) 507-8588

*Representing:* Center for Environmental Health

**Kutak Rock LLP**
Jad Davis, Esq. (jad.davis@kutakrock.com)
Tessa Yutadco, Esq. (tessa.yutadco@kutakrock.com)
5 Park Plaza, Suite 1500
Irvine, CA 92614
Phone: (949) 417-0999
Fax: (949) 417-5394

*Representing:* Mattco Forge, Inc.

**Latham & Watkins LLP**
Joseph De Leon, Esq. (joseph.deleon@lw.com)
Monica Klosterman, Esq. (monica.klosterman@lw.com )
Michael Romey, Esq. (michael.romey@lw.com)
Jamie Sprague, Esq. (jamie.sprague@lw.com)
Kirk Wilkinson, Esq. (kirk.wilkinson@lw.com)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Phone: (213) 485-1234
Fax: (213) 891-8763

*Representing:* Aerocraft Heat Treating Company, Inc.
Carlton Forge Works, Inc.
Precision Castparts Corporation
Press Forge Company

**Law Office of Babak Naficy**
Jamie Garretson, Esq. (naficy.jamie@gmail.com)
Babak Naficy, Esq. (babaknaficy@sbcglobal.net)
1540 Marsh Street, Suite 110
San Luis Obispo, CA 93401
Phone: (805) 593-0926
Fax: (805) 593-0946

*Representing:* Doris Nichols, et al.

**Law Office of Kurt S. Bollin**
Kurt Bollin, Esq. (kurt@bollinlaw.com)
1506 Oak Street-D
South Pasadena, CA 91030
Phone: (818) 599-8020
Fax: (626) 399-0144

*Representing:* Doris Nichols, et al.

**Lexington Law Group**
Ryan Berghoff, Esq. (rberghoff@lexlawgroup.com)
Mark Todzo, Esq. (mtodzo@lexlawgroup.com)
503 Divisadero Street
San Francisco, CA 94117
Phone: (415) 913-7800
Fax: (415) 759-4112

*Representing:* Center for Environmental Health

**Liddle & Dubin, P.C.**
Nicholas Coulson, Esq. (ncoulson@ldclassaction.com)
Steven Liddle, Esq. (sliddle@ldclassaction.com)
975 E. Jefferson Avenue
Detroit, MI 48207
Phone: (313) 392-0015
Fax: (313) 392-0025

*Representing:* Eglossiree Norman, an individual, on behalf of
herself, the general public and those similarly
situated

**Rutan & Tucker, LLP**
Michael Adams, Esq. (madams@rutan.com)
Mark Frazier, Esq. (mfrazier@rutan.com)
611 Anton Boulevard, 14th Floor
Costa Mesa, CA 92626
Phone: (714) 641-5100
Fax: (714) 546-9035

*Representing:* Weber Metals, Inc.

**South Coast Air Quality Management District**
Barbara Baird, Esq. (bbaird@aqmd.gov)
Nicholas Sanchez, Esq. (nsanchez@aqmd.gov)
Kurt Wiese, Esq. (kwiese@aqmd.gov)
William Wong, Esq. (wwong@aqmd.gov)
21865 Copley Drive
Diamond Bar, CA 91765
Phone: (909) 396-3400
Fax: (909) 396-2963

*Representing:* People of the State of California ex rel. South
Coast Air Quality Management District

**Stoel Rives, LLP**
Melissa Jones, Esq. (melissa.jones@stoel.com)
Bao Vu, Esq. (bao.vu@stoel.com)
500 Capitol Mall, Suite 1600
Sacramento, CA 95814

*Representing:* Aerocraft Heat Treating Company, Inc.
Carlton Forge Works, Inc.
Precision Castparts Corp.

Phone: (916) 447-0700
Fax: (916) 447-4781

**Webb Law Group, APC**                                    *Representing:* Erma Calzada, et al.
Lenden Webb, Esq. (lwebb@wblawgroup.com)
466 W. Fallbrook Avenue, Suite 102
Fresno, CA 93711
Phone: (559) 431-4888
Fax: (559) 821-4500